**WELLS AMERICAN CORPORATION, Plaintiff,**

v.

**SUNSHINE ELECTRONICS, Defendant.**

Civ. A. No. 3:89–1356–15.

United States District Court,
D. South Carolina,
Columbia Division.

July 24, 1989.

Robert K. King, Thomas A. Boland, Sr., West Columbia, S.C., for plaintiff.

Cameron B. Littlejohn, Jr., Lewis, Babcock, Pleicones & Hawkins, Columbia, S.C., George S. Bellas & Associates, P.A., Chicago, Ill., for defendant.

### ORDER

HAMILTON, District Judge.

This diversity action arises out of plaintiff's unilateral decision to purchase special order goods from a small Illinois manufacturer who has never solicited business in the State of South Carolina. The matter is before the court upon defendant's motion to dismiss for lack of personal jurisdiction, Rule 12(b)(2), Fed.R.Civ.Proc., or, alternatively, for a change in venue. 28 U.S.C. §§ 1404, 1406. The court has concluded

that exercise of jurisdiction over defendant is barred by Fourteenth Amendment due process.

Sunshine Electronics (Sunshine) is an Illinois corporation having its principal place of business in Elk Grove Village, Illinois. Most of Sunshine's business is transacted within the State of Illinois, and it maintains no offices outside of that State. More importantly, Sunshine has never solicited or transacted any business within South Carolina. In early August 1988, a representative of Wells American Corporation (Wells American),[1] William Metts (Metts), made an *unsolicited* telephone call to Sunshine at its office in Illinois. Metts stated that he had been referred to Sunshine by a company in Wisconsin, and expressed an interest in coming to Illinois to visit Sunshine's facilities.

On August 11, 1988, representatives of Wells American placed a verbal purchase order for printed computer circuit boards to be manufactured according to its specifications. Sunshine received a written purchase order signed by Metts on August 15, 1988, and it shipped the manufactured boards via common carrier to Wells American on or about August 19, 1988. Wells American ordered additional quantities of specially manufactured circuit boards, in each instance unsolicited by Sunshine, on several different occasions from August 1988 to April 1989. During this time period representatives of Wells American visited Sunshine's office on at least two occasions.

In contrast to this pattern of solicitation by Wells American, Sunshine never contacted Wells American by telephone or in person, except on one occasion. On April 24, 1989, apparently out of concern over a debt in excess of $180,000 owed by Wells American, the President of Sunshine, Ashok Patel (Patel), travelled to Columbia, South Carolina, to determine the status of the amount due. After Patel was promised biweekly payments of $15,000, he left additional manufactured product which had previously been ordered by Wells American, and immediately departed from Columbia without making any attempt to solicit business or develop a market for its circuit boards in South Carolina. Aside from this trip to Columbia to collect outstanding accounts receivable, during which Patel made no attempts to promote business for his company in South Carolina, Sunshine has never attempted to develop a market for its products in this State. Its only contact with South Carolina was created solely by virtue of the unilateral actions of Wells American in placing unsolicited orders for specially manufactured goods from an entity with no previous contacts with this forum.

On May 26, 1989, Wells American brought the present suit alleging causes of action for breach of warranty and breach of contract against Sunshine. Sunshine filed the present motion on June 19, 1989, and Wells American filed its brief in opposition on July 7, 1989. The present motion is thus ripe for disposition by this court.

Evaluating the propriety of in personam jurisdiction over a nonresident defendant involves a two-step inquiry. First, reference to the forum state long-arm statute is necessary to determine whether a statutory basis exists sufficient to assert jurisdiction over the nonresident defendant. If assertion of personal jurisdiction is permissible under the long-arm statute, the inquiry next proceeds to the issue of whether the assertion of jurisdiction is consistent with the requirements of Fourteenth Amendment due process.

■ Wells American contends, and Sunshine does not dispute, that South Carolina Code § 36–2–803 provides statutory authority for assertion of personal jurisdiction over the defendant in this action. That section provides in pertinent part:

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(a) transacting business in this State;

**1.** Wells American is a Maryland corporation with its principal place of business in Lexington County, South Carolina.

(b) contracting to supply services or things in the State;

.    .    .    .    .

(g) entry into a contract to be performed in whole or in part by either party in this State; or

(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

. . . .

S.C.Code Ann. § 36–2–803. At a minimum, it is clear that Sunshine contracted, albeit in Illinois, to provide printed circuit boards to Wells American, and that Wells American's facility is located in South Carolina. Accordingly, the court agrees with both parties that a statutory basis for jurisdiction exists in the present case.

Nevertheless, assertion of in personam jurisdiction over Sunshine must also comport with Fourteenth Amendment due process. It is well established that the exercise of personal jurisdiction is only permissible where the defendant purposely established minimum contacts in the forum state, *Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 108, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987), *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), *World–Wide Volkswagen Corp.* *v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), such that exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In conducting this inquiry, the focus must necessarily center on the contacts generated by the defendant or its agents, *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), *Chung v. NANA Development Corp.,* 783 F.2d 1124, 1127 (4th Cir.), *cert. denied,* 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986), and not on the *unilateral* actions of some other entity. *World–Wide Volkswagen,* 444 U.S. at 295–99, 100 S.Ct. at 566–67 ("it is the *defendant's* conduct and connection with the forum State such that he should reasonably anticipate being haled into court there") (emphasis added); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984) ("unilateral activity of another party or a third person is not an appropriate consideration."); *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239–40 ("unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with forum State").[2]

---

**2.** In *World–Wide Volkswagen* the Court alluded to the stream of commerce theory of in personam jurisdiction, under which the assertion of jurisdiction over a nonresident defendant is permissible where it delivers "products into the stream of commerce with the expectation that they will be purchased by *consumers* in the forum State." 444 U.S. at 298, 100 S.Ct. at 567 (emphasis added). "But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's *conduct and connection* with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567 (emphasis added). This latter limitation on the stream of commerce approach, which is of course essential to avoid total "abandonment of all limits on personal jurisdiction," *Chung,* 783 F.2d at 1126, *Hanson v. Denckla,* 357 U.S. at 251, 78 S.Ct. at 1238 (it is a mistake to assume that the increasing need for jurisdiction over nonresidents due to increased flow of interstate commerce heralds the eventual demise of all restrictions on personal jurisdiction), serves the inherent due process objective of fair notice, giving "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

Although the Supreme Court is apparently divided as to whether mere placement of a product into the stream of commerce is sufficient to confer personal jurisdiction in any forum, *compare Asahi,* 107 S.Ct. at 1033 ("placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State") (plurality opinion of O'Connor, J., representing opinion of four Justices) *with* 107 S.Ct. at 1035–36 (as long as a participant in the stream of commerce is aware that its final product is being marketed in the forum State, assertion of

More recent Supreme Court opinions suggest that a two-part inquiry is essential to a proper resolution of the jurisdictional question. First, the court must determine whether the nonresident defendant has purposefully directed or established minimum contacts with the forum state. *Asahi*, 107 S.Ct. at 1031; *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182. Second, it must be determined whether assertion of jurisdiction comports with "fair play and substantial justice." *Asahi*, 107 S.Ct. at 1033; *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184.

Within the context of interstate contractual obligations, the focus under the first prong of the due process inquiry remains on whether "the contacts proximately re-

personal jurisdiction is consistent with due process without a showing of additional conduct purposely directed toward forum State by defendant) (concurring opinion of Brennan, J., representing opinion of four Justices), it is not necessary to the proper resolution of the present case to evaluate this issue as the stream of commerce theory is not applicable to the present facts.

In contrast to the universally distributed standard commodity products that typically implicate the stream of commerce theory, such as the retail sale of an automobile in *World–Wide Volkswagen*, a valve assembly for a motorcycle tire in *Asahi*, and a safety valve incorporated into a water heater in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), which are thrust into interstate commerce with a view toward selling to any willing buyer with no geographical or regional marketing preference or design, in the present case Sunshine manufactures special order parts that are not blindly thrust into the stream of commerce, but rather are individually and deliberately contracted and marketed to specific customers—most of which are located in its home state of Illinois. Indeed, Sunshine never solicited any special orders within South Carolina, and did not solicit the special order of circuit boards purchased by Wells American in August 1988. Wells American solicited each special order, and visited Illinois on several occasions to assist in this process. Representatives of Sunshine served as mere passive receptors in the relationship between the two companies, and only visited the office of Wells American on a single occasion, and then not as a means to develop new markets in South Carolina, or otherwise to purposely avail itself of the South Carolina market, but merely to collect money due it. Obviously, unless minimum contacts sufficient to satisfy due process can be manufactured by the unilateral actions of someone other than the defendant, a development which would effectively herald the end of any significant limitations on the extraterritorial assertion of jurisdiction by forum-based courts, *see Hanson v. Denckla*, 357 U.S. at 251, 78 S.Ct. at 1238, *Chung*, 783 F.2d at 1126, the passive inaction of Sunshine in the present case cannot be manipulated to "manufacture minimum contacts from every amenable act." *Id.* at 1129.

The temptation to abandon all due process restraints on the assertion of in personam jurisdiction has not been resisted merely because of the inherent virtue or prudential restraint of the judiciary, but rather by traditional constitutional doctrines that, even at this late date, are not entirely defunct or archaic. Although the rigid standard of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), which required physical presence of the defendant within the forum state to confer personal jurisdiction, has long been repudiated, the Supreme Court has repeatedly given numerous rationales for continuing recognition of limitations on assertion of in personam jurisdiction. These primarily have included: (1) territorial limitations on the power of the respective States, *Hanson v. Denckla*, 357 U.S. at 251, 78 S.Ct. at 1238, (2) principles of interstate federalism embodied in the Constitution, *World–Wide Volkswagen*, 444 U.S. at 293, 100 S.Ct. at 565, and (3) preservation of fundamental individual liberty, *Burger King*, 471 U.S. at 472 n. 13, 105 S.Ct. at 2182 n. 13, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03 n. 10, 102 S.Ct. 2099, 2104–05 n. 10, 72 L.Ed.2d 492 (1982). Interestingly, Justice White wrote the opinion for the Court in both *World–Wide Volkswagen* and *Insurance Corp.*, and, in the later case, *Insurance Corp.*, appeared to rule out federalism concerns as an independent check on the assertion of in personam jurisdiction. Nevertheless, at least one commentator has noted that federalism concerns should not be read completely out of the jurisdictional inquiry:

> Notwithstanding the Insurance Corporation of Ireland case, it does not seem plausible to read territoriality and sovereignty concerns entirely out of the minimum contacts analysis. Although it is true that the Due Process Clause of the Fourteenth Amendment 'makes no mention of federalism concerns,' it nonetheless also is true that the states to which that amendment applies are coequal sovereigns within a federalist system, and the amendment must be read with this in mind. Moreover, state courts always have had the power to assert jurisdiction over any defendant found within the territory of the state.

4 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1067, at 293. Accordingly, concerns of federalism are included herein as a potential independent check on assertions of personal jurisdiction, or, alternatively, as just another subsidiary consideration to be evaluated under the rubric of the "minimum contacts" inquiry.

sult from actions from by the defendant *himself* that create a 'substantial connection' with the forum state." *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (emphasis in original). Accordingly, parties who " '*reach out beyond one state and create* continuing obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)) (emphasis added). Significantly, each of these alternative formulations stress that the focus of the "minimum contacts" analysis must remain on the party over whom jurisdiction is asserted, and not on the unilateral actions of some other entity.

In *Burger King* the Supreme Court determined that jurisdiction existed over a Michigan resident who entered into an ongoing franchise agreement with a Florida corporation. The defendant had *initiated* dealings with the Florida corporation and "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts." Furthermore, the franchise agreement provided that all disputes would be governed by Florida law, thereby serving the primary function underlying due process constraints on assertion of personal jurisdiction—as the defendant had fair notice that he might be subject to suit in Florida by the language of the agreement itself. *Burger King*, 471 U.S. at 481, 105 S.Ct. at 2187.

■ Unlike the defendant in *Burger King*, who *initiated* negotiations with a Florida corporation toward the ultimate objective of establishing an ongoing franchise relationship, Sunshine never sought business from any resident of South Carolina, but merely agreed to manufacture a number of distinct, unsolicited orders of specially designed circuit boards. Additionally, unlike *Burger King*, the defendant here did not pursue a continuing relationship with Wells American, and never entered into any contract which envisioned future consequences aside from delivery by common carrier of product ordered. Perhaps most important, in contrast to the choice of law provision governing contractual disputes arising from implementation of the 20 year franchise agreement in *Burger King*, which clearly gave the Michigan resident fair notice that he might be haled into a Florida forum, *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, *Kulko v. California Superior Court*, 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978), Sunshine never received any notice of possible legal consequences arising from its attenuated and fortuitous contact with South Carolina until receipt of Wells American's complaint against it for alleged breach of contract and breach of warranty. Under Wells American's grudging interpretation of due process limitations upon the assertion of in personam jurisdiction, Sunshine's mere acquiescence to Wells American's unilateral, unsolicited orders of specially manufactured goods would now subject it to expensive litigation in a distant, inconvenient forum—even though all of Sunshine's contacts with this forum have been generated by Wells American through its initiation of contact with Sunshine, including travelling to Sunshine's facilities on several occasions, and its refusal to pay for product ordered, which apparently was manufactured pursuant to specifications it provided to Sunshine.[3]

The facts of the present case are also readily distinguishable from other land-

---

**3.** Allowing the assertion of in personam jurisdiction under these circumstances would serve to undermine the very essence underlying due process restraints upon the assertion of personal jurisdiction. If the "minimum contacts" inquiry can be manipulated to create personal jurisdiction where an in-state resident manufactures contacts between its home forum and a nonresident entity by means of its own extraterritorial inducements, then very little legal predictability remains to enable potential defendants "to structure their primary conduct with some minimum assurance as to where that conduct" will subject them to suit, *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, rendering interstate commercial dealings "unobliging and brusque." *Chung*, 783 F.2d at 1128.

mark cases in which the Supreme Court has upheld assertion of personal jurisdiction within the context of interstate contractual obligations. Significantly, both of these decisions involved suits against nonresident insurance concerns, where the state regulatory interest is great. In *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) the Court determined that a Virginia court could assert jurisdiction over a Nebraska health insurance company that had over 800 Virginia customers and had solicited business in Virginia since 1904. Cease and desist proceedings under state statute were initiated by Virginia's State Corporation Commission, alleging that defendant was ineligible to solicit business in Virginia due to noncompliance with comprehensive regulatory provisions which, among other things, required the out-of-state concern to consent to suit in Virginia.

The Court determined that where the nonresident business reached out and created continuing "relationships and obligations" with citizens of the forum state, courts need not resort to a fictional consent in order to subject the nonresident defendant to the jurisdiction of state regulatory agencies. *Id.* at 647, 70 S.Ct. at 929. Noting that states had a legitimate interest in protecting their residents from the actions of nonresident insurers, the Court held that it did not offend traditional notions of fair play and substantial justice to require the defendant to defend the suit in a Virginia forum. *Id.* at 648, 70 S.Ct. at 930. Critical to the Court's reasoning, however, was the fact that the *defendant* had created continuing obligations between itself and 800 certificate holders in the forum state, such that denial of a Virginia forum might leave injured certificate holders only able to seek redress in some distant state (Nebraska). *Id.* at 648–49, 70 S.Ct. at 930. The Court concluded that it was unwise, unfair, and unjust to require this type of long distance lawsuit where the average claim was "seldom so large" as to enable a certificate holder to afford the "expense and trouble" of a Nebraska lawsuit. *Id.*

The difference between the present facts and those the Court faced in *Travelers Health Ass'n* are wholly antithetical. Unlike the defendant there, who solicited business in Virginia on a continuous basis, and had done so for over 46 years, Sunshine has never solicited business in South Carolina, and has never even entered into a contractual relationship with a South Carolina resident aside from its acceptance of the unsolicited orders for specially manufactured product sought by Wells American. But it is well established that an "individual's contract with an out-of-state party *alone* can[not] automatically establish sufficient minimum contacts in the other party's home forum," *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185, at least where defendant has established no meaningful " 'contacts, ties, or relations.' " *Id.* at 472, 105 S.Ct. at 2181–82 (quoting *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 160).

Also noticeably absent from the present case, at least relatively so, is the strong state interest that existed in *Travelers Health Ass'n.* In contrast to Virginia's interest in protecting its residents from a foreign insurer who had solicited business in Virginia for over 46 years, had over 800 customers within the forum state, and had refused to comply with Virginia's regulatory prerequisites for companies who regularly solicited business in Virginia, a strong state interest does not exist on the present facts. Contrast the obvious strong interest in protecting forum state residents from a company seeking regular business within the state with the marginal interest a state has in alleviating the costs of litigation for an in-state company who unilaterally and repeatedly travels to a distant forum to order specially manufactured goods, and then files suit for breach of contract and breach of warranty after a demand for payment of over $180,000 is made by the nonresident corporation. It can hardly be argued that the due process clause was intended to subsidize the distant excursions of in-state companies, or, perhaps more important, as a vehicle to enable an in-state company to initiate dealings with a distant, small company, refuse to pay for items ordered, and then attempt to subject the

nonresident company to suit in its home forum. As stated by this circuit in *Chung*, "[i]f a party's slightest gesture of accommodation were to impose personal jurisdiction, commercial dealings would soon turn unobliging and brusque." 783 F.2d at 1129. Accordingly, the Court's holding in *Travelers Health Ass'n* does not compel a similar result in the present case.[4]

The Court's decision in *McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) also revolved around the relationship between insurer and insured. As in *Travelers Health Ass'n*, the *insurer initiated* contacts with a resident of the forum state, offering to reinsure him pursuant to the same terms he had enjoyed with his previous insurer, whose insurance obligations the defendant had agreed to assume. The insured accepted this offer, and timely paid his premiums until the time of his death. Upon the death of the insured, the beneficiary sent proof of the insured's death, but defendant refused to pay, alleging that the insured had committed suicide. Emphasizing that the insurance contract at issue had a *substantial* connection with the forum state, the Court determined that the forum state had "a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." *Id.* at 223, 78 S.Ct. at 201. Like in *Travelers Health Ass'n*, the Court stressed the inequity of requiring forum residents to follow insurance companies to their home states in order to hold them legally accountable. *Id.* Accordingly, the Court held that assertion of jurisdiction over the nonresident insurer did not offend due process.[5]

In contrast to *McGee*, defendant has never solicited business in South Carolina—not even the one customer sufficient to support jurisdiction in *McGee*. Rather, Sunshine's only in-person contact with South Carolina was to collect a debt attributable to Wells American's apparent failure to pay for goods it unilaterally and unsolicitously ordered. The unfairness of requiring a beneficiary who never travelled to the insurer's office, or, for that matter, who never undertook any discussions with the insurer prior to the insured's death, to now maintain suit in a distant forum is quite different from requiring Wells American to maintain its suit in a more convenient forum to Sunshine, as Wells American initiated the relationship between the parties, travelled numerous times to Sunshine's office to order specially manufactured goods which had not previously been thrust into the stream of commerce, and then refused to pay for product ordered.

In view of the fact that Sunshine never purposely directed its activities toward this forum, and merely accepted a discrete number of offers to produce specially manufactured circuit boards, this court is constrained to conclude that Sunshine has never *itself* created a substantial connection

---

4. Other distinctions between *Travelers Health Ass'n* and the present case are also readily apparent. First, unlike *Travelers Health Ass'n*, the dispute in the present case does not involve a state's authority to enforce regulatory laws vis-a-vis foreign corporations, but merely involves a contractual dispute between two private entities. Most important, whereas the contacts between the insurer and Virginia were systematic and continuous, and had been so for over 46 years, the contacts between South Carolina and Sunshine have been nonexistent aside from Wells American's unsolicited availment of Sunshine's manufacturing capabilities.

5. Reconciliation of *McGee* and *Hanson v. Denckla*, both decided the same term, has proved troublesome for some commentators. However, the actions of the insurer in McGee, in a sense, exhibit its purposeful availment of the benefits and privileges of conducting business in the forum state. The insurer quite obviously *solicited* the business in the forum state (unlike Sunshine presently), accepted the payment of premiums from the forum state, and regularly mailed invoices to its customer in the forum state. 355 U.S. at 223, 78 S.Ct. at 201. The obvious inability to prevent, and passive acceptance by a trustee of, a settlor's relocation to a forum in which the defendant had never solicited or conducted business stands in marked contrast. See *Hanson v. Denckla*, 357 U.S. at 238–39, 78 S.Ct. at 1231–32. Also, the context in which *McGee* arose, involving the relationship between insurer and insured—where a strong state interest exists in protecting consumers from potential insurance company exploitation—was expressly relied upon by the Court in *McGee* as an important factor for its decision. This critical factor is noticeably absent in the present case.

between itself and South Carolina. Accordingly, minimum contacts cannot be said to exist on the present facts.[6]

Consideration of whether assertion of personal jurisdiction is fair, reasonable, and in accordance with traditional notions of substantial justice only serves to reinforce this court's conclusion that jurisdiction is not permissible under the present circumstances. The factors relevant to the "fairness" prong are well established. As most recently stated by the Court, a trial court should consider the relative burdens on and interests of the respective parties as well as the interests of the forum state and the interstate judicial system's interest in obtaining the most efficient resolution of controversies and of furthering fundamental substantive social policies. As stated by the Court:

> [a] court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi*, 107 S.Ct. at 1034 (quoting *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564 (citations omitted)).

In the present case, Wells American unilaterally initiated what turned out to be a very short-lived relationship. It unsolicitously ordered specially manufactured products from a small, distant manufacturer. Representatives of Wells American travelled to the facilities of Sunshine on several occasions. Sunshine passively accepted each order, but engaged in no activity throughout the course of the parties' brief relationship directed toward establishing minimum contacts with South Carolina. Rather, its acquiescence to Wells American's requests for product are the type of attenuated and isolated contacts which should not subject Sunshine to suit in the initiator's home forum. *See Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. It is hardly unfair to require Wells American to litigate this matter in the most logical forum, Illinois. Illinois was the situs where each contract was entered into, where Wells American's offers to buy goods were telephonically delivered, and where representatives of Wells American travelled to on several occasions to request that Sunshine produce goods according to specifications submitted by Wells American. The scales of convenience would thus appear to point toward Illinois as the proper forum for resolution of this matter, and not towards a forum where defendant has direct-

---

**6.** The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction based on "random," "fortuitous," or "attenuated" contacts. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. Factors such as prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing, therefore, must necessarily determine whether a party has purposely established minimum contacts with the forum state. *Id.* at 479, 105 S.Ct. at 2185.

Obviously, application of these factors to the present case evinces the unavoidable conclusion that Sunshine has not purposely established minimum contacts with South Carolina. Prior negotiations were unilaterally and unsolicitously initiated by Wells American, and at no point were any of the orders placed by Wells American anything more than individual discrete orders for a definite number of circuit boards. Indeed, Wells American has shown nothing more than that it ordered a certain number of circuit boards on a few separate occasions. On

each occasion it initiated contact with Sunshine, and at no point did Wells American inform Sunshine that a continuing business relationship was sought. In fact, the relationship was of such short duration, at least within the context of industrial manufacturing, that Sunshine was apparently never paid for any goods received through April 1989, and was forced to terminate the relationship because of this apparent default by Wells American. Moreover, unlike *Burger King*, the present contracts entered into between Wells American and Sunshine reveal no intention of a continuing, long-term relationship, or even specify a forum for resolution of disputes. Finally, the parties' actual course of dealing indicates that Wells American generated all of Sunshine's attenuated contacts with South Carolina. It requested that Sunshine ship it products to South Carolina, and, eventually forced representatives of Sunshine to travel to South Carolina in an attempt to collect over $180,000 for goods shipped but never paid for by Wells American.

ed no effort other than to collect money due arising from unsolicited orders.

Perhaps even more important, unlike the important state interests served in *McGee* and *Travelers Health Ass'n* of providing a convenient forum for resolution of disputes between parties of greatly disparate resources—insurers and their customers, forcing Sunshine to submit to a South Carolina forum would foster no substantial state interest, would apparently further no important fundamental substantive social policies, and would lead to the inefficient resolution of this controversy. Although the State of South Carolina has an interest in protecting its residents, primarily consumers, from unsafe or defective products, this interest is not implicated on the present facts—as Sunshine merely manufactured goods according to precise specifications submitted by an *industrial buyer* —who subsequently accepted such goods without objection on each occasion, and apparently only objected to the quality of the goods after a demand for payment of a debt of over $180,000 was made by Sunshine. Moreover, unlike the overwhelming practicality and important social policy served by forcing insurers to defend suits in jurisdictions in which they regularly solicit business, as in *McGee* and *Travelers Health Ass'n*, social policy would appear best served by allowing suit to proceed in the forum in which all business was solicited, Illinois. Accordingly, haling Sunshine into a distant forum where it never purposely directed its efforts would not appear fair or reasonable under the present facts and circumstances.

Based on the foregoing reasoning and cited authorities, this court is constrained to grant defendant's motion to dismiss for lack of personal jurisdiction. Rule 12(b)(2), Fed.R.Civ.Proc.[7]

IT IS SO ORDERED.

---

**7.** Defendant's alternative motion for a change of venue is mooted by the court's disposition of this matter.