BARBARA (KITE) MILLER v. DENNIS SHERMAN KITE

No. 479PA84

(Filed 7 May 1985)

**Constitutional Law § 24.7; Process § 9.1— child in this state—visitation and support payments in this state—insufficient contacts for personal jurisdiction**

Defendant did not have the constitutionally required minimum contacts with North Carolina to allow a child support action to be maintained against him in this state where defendant's only contacts with this state were his occasional visits to see his daughter who resided in this state, the fact that he mailed monthly support checks to plaintiff at her North Carolina residence, and the fact that the child has attended North Carolina public schools and otherwise enjoyed the benefits and protections of our laws. The child's presence in North Carolina was solely the result of plaintiff's decision to live

here with the child and did not compel a finding that defendant purposefully availed himself of the benefits and protections of the laws of this state.

Justice VAUGHN took no part in the consideration or decision of this case.

APPEAL pursuant to N.C.G.S. 7A-30(1) from the decision of the Court of Appeals, 69 N.C. App. 679, 318 S.E. 2d 102 (1984), affirming an order entered by *Judge William M. Styles* on February 15, 1983 in District Court, BUNCOMBE County, denying the defendant's motion to set aside a child support order entered against him on July 2, 1982. Heard in the Supreme Court March 14, 1985.

*No appearance by plaintiff appellee.*

*Pitts, Hugenschmidt, Krause & Davis, P.A., by Sara H. Davis, for defendant appellant.*

MITCHELL, Justice.

The sole issue before this Court is whether the trial court had *in personam* jurisdiction over the defendant and could lawfully enter a child support order against him. We hold that the trial court did not have *in personam* jurisdiction over the defendant and that the child support order against him must be vacated. Accordingly, we reverse the decision of the Court of Appeals.

The parties to this action were married in Illinois in 1967. A daughter, Debra Hillary Kite, was born in Illinois on July 18, 1968. In 1971 the parties separated and the plaintiff wife took custody of the daughter. They entered into a separation agreement which provided that the defendant father would pay $300.00 per month to the plaintiff for the support of the minor child. The parties were divorced October 2, 1972.

Sometime after the divorce, the plaintiff wife brought the child to North Carolina where they resided until this action was filed. The defendant remained in Illinois until 1977 when he accepted employment with The Bank of America. He has since lived in Texas and California. At the time this action was filed he was domiciled in and a citizen of California but resided in Tokyo, Japan. From January, 1973, until the plaintiff and the child left North Carolina in April, 1982, the defendant mailed monthly child support checks to the plaintiff at her North Carolina residence.

Miller v. Kite

On several occasions between 1973 and 1981 the defendant visited his daughter in North Carolina.

In April, 1982, the plaintiff initiated this action for child support in District Court, Buncombe County. A hearing was subsequently held. The defendant, however, did not appear and was not represented by counsel. The trial court entered an order on July 2, 1982 in which it found that the needs of the child had increased substantially since the separation agreement had been entered. The trial court also found that the defendant's income had increased since the entry of the separation agreement. Based upon these and other findings, the trial court concluded that there had been a substantial and material change of circumstances and ordered the defendant to pay $800.00 per month for the support and maintenance of the child, plus attorney's fees.

After filing a notice of limited appearance, the defendant's attorney made a motion to set aside the July 2 order as void due to the fact that the trial court did not have personal jurisdiction over the defendant. In support of the motion the defendant filed several affidavits which tended to show that he has never lived in North Carolina or purchased any property here, and that his only contacts with this State were his occasional visits to see his daughter and the fact that he mailed the monthly support checks to the plaintiff at her North Carolina residence. The defendant also denied that he had ever been properly served with process. The trial court denied the defendant's motion after determining that he had been properly served with process and that the court had jurisdiction over him. The Court of Appeals affirmed.

We have held that a two-step analysis is to be employed to determine whether a non-resident defendant is subject to the *in personam* jurisdiction of our courts. First, it should be ascertained whether the statutes of this State allow our courts to entertain the action the plaintiff has brought against the defendant. If so, it must be determined whether the exercise of this power by the courts of North Carolina in the case at hand violates due process. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977). On the facts of this case, however, we find it unnecessary to address the first issue. Assuming *arguendo* that our Long-Arm Statute, N.C.G.S. 1-75.4, gives North Carolina courts *in personam* jurisdiction over the defendant, application of

the statute to him in this case would violate the due process clause of the Fourteenth Amendment to the Constitution of the United States.

The power of a state court to render a valid personal judgment against a non-resident defendant is limited by the due process clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). The Supreme Court has stated that due process requires that the defendant possess sufficient "minimum contacts" with the forum state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), *quoting from Milliken v. Meyer*, 311 U.S. 457, 463 (1940). The concept of "minimum contacts" furthers two goals. First, it safeguards the defendant from being required to defend an action in a distant or inconvenient forum. Second, it prevents a state from escaping the restraints imposed upon it by its status as a coequal sovereign in a federal system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

In *Hanson v. Denckla*, 357 U.S. 235 (1958), the Supreme Court held that a state does not acquire personal jurisdiction over the defendant simply by being the "center of gravity" of the controversy or the most convenient location for the trial of the action. The Court also stated:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 253. The Supreme Court has also indicated that a factor to be considered is whether the defendant had reason to expect that he might be subjected to litigation in the forum state. *See, e.g., Shaffer v. Heitner*, 433 U.S. 186 (1977). The foreseeability that is crucial to due process analysis is "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

As noted by the Court of Appeals, the defendant's contacts with North Carolina are that his daughter has lived here for nine years, during which time he has sent child support payments to the plaintiff at her North Carolina residence. The defendant has also come to North Carolina on several occasions to visit his daughter. The Court of Appeals also determined that the defendant has contact with this State due to the fact that the child has attended North Carolina public schools and otherwise enjoyed the benefits and protections of our laws. The Court of Appeals held that these contacts justified the exercise of *in personam* jurisdiction over the defendant by the North Carolina courts. We disagree and hold that the defendant does not have the constitutionally required minimum contacts with North Carolina to allow this action to be maintained against him.

Our conclusion is mandated by *Kulko v. Superior Court of California*, 436 U.S. 84, *reh. denied*, 438 U.S. 908 (1978). In that case the parties were residents of the State of New York. They separated and the mother moved to California. They subsequently entered into a separation agreement which gave the father custody of their two children. The agreement provided that the children were to spend their Christmas, Easter and summer vacations with the mother. The father was to pay $3,000 per year in child support for the period when the children were in her care and custody. Approximately a year after this agreement was entered into, the daughter informed her father that she wished to live with her mother. The father consented and bought an airline ticket to California for her. Thereafter, she lived in California and spent her vacations with her father in New York. Two years later the other child informed the mother that he also wanted to live with her. She sent a plane ticket to him which he used to fly to California.

The mother subsequently brought an action in California against the father seeking custody of the children and increased child support. The father moved to dismiss the claim for increased child support on the ground that the California courts lacked jurisdiction over him. The trial court denied the father's motion. The Supreme Court of California affirmed. *Kulko v. Superior Court of the City and County of San Francisco*, 19 Cal. 3d 514, 564 P. 2d 353, 138 Cal. Rptr. 586 (1977). The California court felt that by sending his daughter to live permanently in

California, the father had purposely availed himself of the protection and benefits of its laws and had caused an effect there which warranted the exercise of *in personam* jurisdiction over him. The Court acknowledged that he had not caused such an effect with respect to his son, but concluded that it would be fair and reasonable for the California courts to exercise *in personam* jurisdiction over him to establish his obligation to support both children. *Id.*

The Supreme Court of the United States reversed holding that the father's acquiescence in the daughter's desire to live with her mother did not establish sufficient minimum contacts to justify the exercise of *in personam* jurisdiction over him by the California courts. The Supreme Court stated:

> A father who agrees, in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have "purposefully availed himself" of the "benefits and protections" of California's laws.

*Kulko v. Superior Court of California*, 436 U.S. 84, 94 (1978).

In the instant case the child's presence in North Carolina was not caused by the defendant's acquiescence. Instead, it was solely the result of the plaintiff's decision as the custodial parent to live here with the child. As previously noted, the Supreme Court has expressly stated that unilateral acts by the party claiming a relationship with a non-resident defendant may not, without more, satisfy due process requirements. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). We conclude that *Kulko* compels a finding that this defendant did not purposefully avail himself of the benefits and protections of the laws of this State. A contrary conclusion would discourage voluntary child custody agreements and subject a non-custodial parent to suit in any jurisdiction where the custodial parent chose to reside. *See Kulko v. Superior Court of California*, 436 U.S. 84, 93 (1978).

The fact that the defendant in the instant case visited the child in North Carolina approximately six times between 1973 and 1981 is also insufficient to establish *in personam* jurisdiction over him. As stated by the Supreme Court in *Kulko*, "To hold such temporary visits to a State a basis for the assertion of in per-

sonam jurisdiction over unrelated actions arising in the future would make a mockery of the limitations on state jurisdiction imposed by the Fourteenth Amendment." *Kulko v. Superior Court of California*, 436 U.S. 84, 93 (1978). The father's visits to California in *Kulko* were fewer and more distant in time from the litigation than were the visits in this case. The visits by this defendant to North Carolina, however, were no less temporary than those in *Kulko* and were so unrelated to this action that he could not have reasonably anticipated being subjected to suit here.

Our conclusion is also guided by the realization that a contrary result could prevent the exercise of the visitation privileges of non-custodial parents. If the minimum contacts standard were satisfied by visiting the child in the forum state, a parent would be faced with the dilemma of visiting the child and subjecting himself to the jurisdiction of the forum state or refraining from such contacts with the child due to the fear of being forced to litigate there.

We acknowledge that the presence of the child and one parent in North Carolina might make this State the most convenient forum for the action. This fact, however, does not confer personal jurisdiction over a non-resident defendant. *Hanson v. Denckla*, 357 U.S. 235 (1958).

We are also mindful that North Carolina has an important interest in ensuring that non-resident parents fulfill their support obligations to their children living here. Absent the constitutionally required minimum contacts, however, this interest will not suffice to make North Carolina a proper forum in which to require the defendant to defend the action or suffer a default judgment. *See Kulko v. Superior Court of California*, 436 U.S. 84, 100-101 (1978). Furthermore, North Carolina's interest in ensuring the support of minor children residing here is provided for in this case by the fact that North Carolina and California each provide for uniform reciprocal enforcement of child support obligations. N.C.G.S. 52A-1 *et seq.*; Cal. Civ. Proc. Code § 1650 *et seq.* (West 1982 & Supp. 1985). *See* Lee, *N.C. Family Law* § 169 (4th ed. 1980).

In summary, the defendant has engaged in no acts with respect to North Carolina by which he has purposefully availed himself of the benefits, protections and privileges of the laws of

this State. Therefore, we hold that the defendant's contacts with this State were insufficient to justify the imposition of *in personam* jurisdiction over him by the North Carolina courts. This result is consistent with the minimum contacts standard and is mandated by the *Kulko* decision.

The defendant also argues that he was not properly served with process. We do not reach or decide this issue, since we allowed the defendant's appeal under N.C.G.S. 7A-30(1) only for the purpose of resolving the constitutional issue previously discussed herein.

For the foregoing reasons, the decision of the Court of Appeals is reversed. This case is remanded to the Court of Appeals for further remand to the District Court, Buncombe County, with instructions to enter an order granting the defendant's motion and vacating the child support order entered against the defendant on July 2, 1982.

Reversed and remanded.

Justice VAUGHN took no part in the consideration or decision of this case.