SANDRA BUTLER, Plaintiff v. JEFFREY BUTLER, Defendant

No. COA01-809

(Filed 6 August 2002)

**1. Jurisdiction— child support—nonresident father—long-arm statute**

The trial court had statutory authority under N.C.G.S. § 52C-2-201(3) and (5) to exercise personal jurisdiction over defendant nonresident father in an action for child support on grounds that "defendant resided with the child in this State" and that the minor child "resides in this State as a result of the acts or directives of" the father where the trial court found on the basis of competent evidence that the father purchased a house in North Carolina partially to allow his daughter to attend school in this State, and that, while still married to plaintiff mother, defendant visited plaintiff and his daughter in this State at least once per month for at least two years and resided in the marital residence for three or more days at a time.

**2. Jurisdiction— personal—domestic action—spouse and children in North Carolina—minimum contacts**

Defendant's right to due process was not violated by the state's exercise of personal jurisdiction over him in a domestic

action where the parties lived in the Bahamas for the first years of their marriage; plaintiff and her two daughters moved to a house in North Carolina purchased by plaintiff and defendant; defendant testified that he was convinced that North Carolina was the best place to educate the girls; defendant visited at least once a month for two years during the marriage, staying in the house for three or more days at a time; defendant maintained a membership in a social and sporting association in Moore County; and defendant used the equity in the house for business purposes.

Appeal by defendant from order entered 2 January 2001 by Judge Lee W. Gavin in Moore County District Court. Heard in the Court of Appeals 27 March 2002.

*The Rosen Law Firm, by Lee S. Rosen and Erik L. Mazzone, for plaintiff-appellee.*

*Staton, Perkinson, Doster, Post, and Silverman, P.A., by Jonathan Silverman and Charles M. Oldham, III, for defendant-appellant.*

CAMPBELL, Judge.

Jeffrey Butler ("defendant") appeals from the trial court's order denying his motion to dismiss plaintiff's action pursuant to N.C. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction. We hold that the trial court correctly concluded that sufficient grounds exist for the courts of this State to exercise personal jurisdiction over defendant in the instant action. Accordingly, we affirm the trial court's ruling.

Jeffrey and Sandra Butler ("plaintiff") were married in Florida on 19 October 1992. The parties have a daughter, Shannon Butler, who was born on 12 November 1991 and lived with the parties in the Bahamas during the first four or five years of their marriage.[1] In 1995 or 1996, plaintiff and her two daughters moved to Florida, then on to North Carolina, where they took up residence in a house in Moore County purchased by plaintiff and defendant.

Plaintiff and defendant separated on 1 July 2000, and on 18 September 2000, plaintiff instituted the instant action, seeking child

_____

1. Plaintiff also has a daughter from a previous marriage who lived with plaintiff and defendant in the Bahamas following their marriage.

support, alimony, postseparation support, and equitable distribution. The complaint alleges that "[d]efendant is a citizen and resident of Freeport, Grand Bahama Island." Defendant was served with the summons and complaint in Florida on 27 September 2000. On 16 October 2000, defendant filed a motion to dismiss plaintiff's complaint under N.C. R. Civ. P. 12(b)(2), asserting that the court lacked personal jurisdiction over him "in that he has at no time been a resident of the State of North Carolina." After hearing the testimony of plaintiff and defendant, the trial court concluded that defendant had sufficient minimum contacts with this State to allow the court to constitutionally assert personal jurisdiction over him under this State's long-arm statutes, including, but not limited to, N.C. Gen. Stat. § 52C-2-201. Accordingly, the trial court denied defendant's motion to dismiss. Defendant appeals.

The denial of a motion to dismiss for lack of personal jurisdiction, although interlocutory, is immediately appealable. N.C. Gen. Stat. § 1-277(b) (2001); *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 293 S.E.2d 182 (1982); *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000). In reviewing an order determining whether personal jurisdiction is statutorily and constitutionally permissible, "[t]he trial court's findings of fact are conclusive if supported by any competent evidence and judgment supported by such findings will be affirmed, even though there may be evidence to the contrary." *Shamley v. Shamley*, 117 N.C. App. 175, 180, 455 S.E.2d 435, 438 (1994) (citing *Little v. Little*, 9 N.C. App. 361, 365, 176 S.E.2d 521, 523-24 (1970)).

It is well settled "that a two-step analysis is to be employed to determine whether a non-resident defendant is subject to the *in personam* jurisdiction of our courts." *Miller v. Kite*, 313 N.C. 474, 476, 329 S.E.2d 663, 665 (1985). First, it should be determined whether North Carolina law provides a statutory basis for the assertion of personal jurisdiction in the action the plaintiff has brought against the defendant. *Id.*; *see also Sherlock v. Sherlock*, 143 N.C. App. 300, 301, 545 S.E.2d 757, 759 (2001); *Shamley*, 117 N.C. App. at 178, 435 S.E.2d at 437. If the court concludes that there is a statutory basis for jurisdiction, it must determine whether the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Miller*, 313 N.C. at 476, 329 S.E.2d at 665.

The trial court entered the following findings of fact in support of its conclusion that personal jurisdiction over defendant was statutorily and constitutionally permissible in the instant case:

**BUTLER v. BUTLER**

[152 N.C. App. 74 (2002)]

a. Prior to the institution of these lawsuits, Defendant purchased a house in Moore County with the Plaintiff partially to allow his daughter to be schooled in North Carolina, therefore availing himself of the Moore County Schools and other associated benefits provided by the state.

b. While married to the Plaintiff and after the parties had purchased their residence in Moore County, the Defendant visited Moore County at least once per month for at least two years. During these visits he would reside in the marital residence for three (or more) day periods.

c. Defendant maintains a membership in Moore County [H]ounds, a social and sporting association and has participated in its activities in Moore County.

d. Defendant has used the equity line attached to the marital residence in Moore County for business purposes.

These findings of fact are supported by the testimony of the parties, which was the only evidence received by the trial court.

Defendant testified that the parties purchased the house in Moore County in 1995 and that his name appears on the deed and on the mortgage to the house. Defendant also testified that he "was convinced that North Carolina was the best place for education for the girls." However, later in his testimony, defendant stated that he took no part in plaintiff's decision to take the girls to North Carolina, but that he agreed to purchase the house and let the girls stay in school here instead of fighting the issue in the Supreme Court of the Bahamas, which was the girls' legal residence. According to defendant's testimony, he moved plaintiff and the girls to Florida in 1995. Two months later, without his knowledge, plaintiff moved with the girls to North Carolina. Defendant testified that he visited plaintiff and the girls an average of once per month following their move to North Carolina. Defendant also testified that he and plaintiff had taken out an equity line of credit on the house in Moore County.

Plaintiff testified that she and defendant purchased the house in North Carolina in 1995 with the intention of moving the following year, and that defendant made preparations to sell his business in the Bahamas in anticipation of the family's move to this State. According to plaintiff, defendant visited her and the girls every two weeks following their move to Moore County. She further testified that defendant used the equity line of credit on the Moore County house

to obtain cash to purchase supplies to take back to the Bahamas for business purposes.[2] Although the testimony of the parties conflicts as to certain details of the course of events, there is competent evidence in the record to support the findings of fact entered by the trial court. Thus, we must determine whether these findings support the exercise of personal jurisdiction over defendant. *See Shamley*, 117 N.C. App. at 180, 455 S.E.2d at 438.

The trial court found statutory grounds for personal jurisdiction under the Uniform Interstate Family Support Act ("UIFSA"), codified in Chapter 52C of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 52C-1-100 to -9-902 (2001).[3] We agree.

UIFSA provides procedural mechanisms for the interstate establishment, enforcement and modification of child and spousal support obligations. N.C.G.S. § 52C-1-103 official commentary; *Welsher v. Rager*, 127 N.C. App. 521, 524, 491 S.E.2d 661, 663 (1997). UIFSA was enacted to replace its predecessor, the Uniform Reciprocal Enforcement of Support Act ("URESA"). Under URESA, a state could assert jurisdiction to establish, vacate, or modify a child or spousal support obligation even when a similar obligation had been created in another jurisdiction. *Welsher*, 127 N.C. App. at 524, 491 S.E.2d at 663. "The result was often multiple, inconsistent obligations existing for the same obligor and injustice in that obligors could avoid their responsibility by moving to another jurisdiction and having their support obligations modified or even vacated." *Id.* UIFSA creates a structure designed to correct this problem and provide for only one support order at a time. N.C.G.S. § 52C-2-201 official commentary.

UIFSA provides two options for a petitioner seeking to establish a child or spousal support order against a respondent residing in another state. First, the petitioner may initiate a two-state proceeding to establish a support order in the respondent's State of residence. N.C.G.S. § 52C-3-301(c); N.C.G.S. § 52C-2-203 to -2-206. This two-state procedure is derived from the two-state procedure under URESA. N.C.G.S. § 52C-3-301 official commentary. In this situation, the initiating State does not assert personal jurisdiction over the nonresident respondent, but instead forwards the case to the responding State (the respondent's State of residence), which has the authority to

---

2. Defendant admitted that he used the equity line of credit to obtain cash but claimed that it was not for business purposes.

3. Contrary to defendant's contention, the court below did not expressly base personal jurisdiction on N.C. Gen. Stat. § 1-75.4(12).

assert personal jurisdiction over its resident. N.C.G.S. § 52C-2-203 official commentary.

The second option is for the petitioner to utilize UIFSA's long-arm statute to obtain personal jurisdiction over the nonresident respondent. N.C.G.S. § 52C-2-201. The petitioner may then file a petition or comparable pleading directly in the State which has or can obtain personal jurisdiction over the respondent. N.C.G.S. § 52C-3-301(c).[4] The purpose of UIFSA's long-arm statute is to reduce the frequency of the two-state procedure. N.C.G.S. § 52C-2-201 official commentary. In a one-state proceeding under the long-arm statute, the forum State may utilize certain two-state procedures which forward the interests of economy, efficiency, and fair play. N.C.G.S. § 52C-2-202 official commentary. Thus, under N.C.G.S. § 52C-2-202, when a court of this State exercises personal jurisdiction over a nonresident under N.C.G.S. § 52C-2-201, it "may apply G.S. 52C-3-315 to receive evidence from another state, and G.S. 52C-3-317 to obtain discovery through a tribunal of another state." N.C.G.S. § 52C-2-202.

[1] In the instant case, plaintiff initiated a one-state action in this State for child support, spousal support and equitable distribution, and the trial court found statutory authority for the exercise of personal jurisdiction under N.C.G.S. § 52C-2-201.

N.C.G.S. § 52C-2-201 allows a tribunal of this State to exercise personal jurisdiction over a nonresident individual in a proceeding to establish a child or spousal support order in the following instances applicable to the instant case:

(3) The individual resided with the child in this State;

. . .

(5) The child resides in this State as a result of the acts or directives of the individual;

. . .

(8) There is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.

---

4. Of course, a third option is always available that does not implicate UIFSA. A petitioner may simply file a suit in the respondent's State of residence (perhaps to settle all issues between the parties in a single proceeding). *See* N.C.G.S. § 52C-2-201 official commentary.

N.C.G.S. § 52C-2-201. When personal jurisdiction is alleged to exist pursuant to subsection (8) of N.C.G.S. § 52C-2-201, the question of statutory authority to exercise personal jurisdiction collapses into the question of whether such exercise of personal jurisdiction meets the due process requirements of the Fourteenth Amendment.

According to the official commentary to N.C.G.S. § 52C-2-201, subsection (8) permits the assertion of long-arm jurisdiction over a nonresident, such as defendant in the instant case, in an action for spousal support. Further, the official commentary states that the assertion of personal jurisdiction under subsection (8) yields jurisdiction over all matters to be decided between the spouses, including the division of property on divorce. N.C.G.S. § 52C-2-201 official commentary.

Applying UIFSA's long-arm statute to the trial court's findings of fact in the instant case, we conclude that statutory personal jurisdiction exists as to plaintiff's child support claim pursuant to subsections (3) and (5) of N.C.G.S. § 52C-2-201. The trial court found as fact based on competent evidence that defendant purchased the house in North Carolina partially to allow his daughter to attend school in this State. This finding of fact supports the legal conclusion that defendant's minor child "resides in this State as a result of the acts or directives of the individual." N.C.G.S. § 52C-2-201(5). The trial court further found as fact that, while still married to plaintiff, defendant visited plaintiff and his daughter in Moore County at least once per month for at least two years and resided in the marital residence for three or more days at a time. These factual findings support the conclusion that defendant "resided with the child in this State." N.C.G.S. § 52C-2-201(3). For these reasons, we conclude that statutory jurisdiction over plaintiff's child support claim exists under UIFSA.[5]

[2] However, in order to assert statutory personal jurisdiction over defendant as to plaintiff's claims for spousal support and equitable distribution, we must rely on subsection (8) of N.C.G.S. § 52C-2-201. Accordingly, if the exercise of personal jurisdiction over defendant complies with constitutional due process standards, the courts of this State are free to exercise such jurisdiction as to all of the claims asserted by plaintiff in the case *sub judice*, and the order of the trial court must be affirmed.

_____

5. A determination that statutory jurisdiction exists pursuant to UIFSA is likewise a determination that statutory jurisdiction exists pursuant to N.C. Gen. Stat. § 1-75.4(2) (2001), which confers personal jurisdiction whenever any special personal jurisdiction statute applies.

**BUTLER v. BUTLER**

[152 N.C. App. 74 (2002)]

The constitutional due process requirements for personal jurisdiction were articulated by the United State Supreme Court in *International Shoe Company v. Washington,* 326 U.S. 310, 90 L. Ed. 95 (1945), in which the Court held:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*Id.* at 316, 90 L. Ed. at 102 (citation omitted). The concept of "minimum contacts" furthers the following two goals: (1) "it safeguards the defendant from being required to defend an action in a distant or inconvenient forum," and (2) "it prevents a state from escaping the restraints imposed upon it by its status as a coequal sovereign in a federal system." *Miller,* 313 N.C. at 477, 329 S.E.2d at 665 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 62 L. Ed. 2d 490 (1980).

In *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283 (1958), the United States Supreme Court held that the unilateral activity of those claiming a relationship with a nonresident defendant may not, without more, satisfy due process requirements. Rather,

> [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 253, 2 L. Ed. 2d at 1298. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542 (1985). However, personal jurisdiction is constitutionally permissible "where the contacts proximately result from actions by the defendant himself[.]" *Id.*

The factors to be considered in determining whether constitutionally sufficient minimum contacts exist include:

> (1) the quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience of the parties.

*Filmar Racing Inc. v. Stewart*, 141 N.C. App. 668, 672, 541 S.E.2d 733, 737 (2001). The United States Supreme Court has also indicated that a factor to be considered is whether the relationship between the defendant and the forum state is such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980).

In the instant case, the house in Moore County was purchased jointly by plaintiff and defendant. Defendant's name appears on both the deed and the home mortgage. Defendant testified that he was convinced that North Carolina was the best place for his daughter and stepdaughter to receive an education. Based on this competent evidence, the trial court found as fact that one reason defendant purchased the house in North Carolina was to allow his daughter to be schooled here. Following their move to North Carolina, defendant visited plaintiff and the girls at least once a month for two years, staying in the house for three or more days at a time. During this period, plaintiff and defendant were still married. Thus, we agree with the trial court's characterization of the house in Moore County as a "marital residence." In addition to visiting his family in this State, defendant maintained a membership in Moore County Hounds, a social and sporting association, and participated in the association's activities in Moore County. Finally, the evidence shows that defendant further benefitted from his connections with this State by using the equity line of credit on the Moore County house for business purposes.

These facts support the conclusion that defendant's contact with this State is the proximate result of his own actions and not the unilateral activity of plaintiff moving to North Carolina with defendant's daughter. In addition, defendant's contacts with this State are sufficiently related to the instant action (both defendant's contacts and the instant action arise out of the family relationship shared by defendant, plaintiff and the parties' daughter) to support the conclusion that defendant should have reasonably anticipated being subjected to suit in this State in relation to those contacts. We further find that North Carolina has an important interest in the resolution of plaintiff's claims in the instant action, since plaintiff and the parties' daughter currently reside in this State. Finally, in light of the nature of his contacts with this State, defendant has failed to show how the exercise of personal jurisdiction over him would be so unfair and inconvenient as to rise to the level of a due process violation.

## BUTLER v. BUTLER

[152 N.C. App. 74 (2002)]

Defendant relies on our Supreme Court's decision in *Miller* to support his contention that he does not possess sufficient minimum contacts with this State to permit the exercise of personal jurisdiction over him. In *Miller*, the evidence showed that the nonresident defendant married the plaintiff in Illinois in 1967 and the parties' daughter was born in Illinois in 1968. Following the parties' separation in 1971, the plaintiff took custody of the daughter, and in late 1972 or early 1973 the plaintiff and daughter moved to North Carolina. In January 1973, the defendant began mailing child support payments to this State, and between 1973 and 1981, the defendant visited his daughter in North Carolina approximately six times. The defendant in *Miller* never lived in North Carolina or purchased property here. Based on these facts, the Court concluded that the daughter's presence in this State was solely the result of the plaintiff's decision as the custodial parent to live here with the child. *Miller*, 313 N.C. at 479, 329 S.E.2d at 666. The Court further concluded that the defendant had not purposefully availed himself of the benefits and protections of the laws of this State and held that the exercise of personal jurisdiction over the defendant would violate due process. *Id.*

Defendant's reliance on *Miller* is misplaced. The quality and nature of defendant's contacts with North Carolina in the instant case far exceed those of the nonresident defendant in *Miller*. Defendant purchased property in this State in order to allow his daughter to benefit from the education provided by this State's public school system, whereas the defendant in *Miller* never purchased any property here. Further, defendant's visits to this State following the purchase of the house in Moore County occurred while he and plaintiff were still married and the two of them held joint custody of their daughter. In *Miller*, the defendant's visits to this State occurred after the parties had separated, the plaintiff had assumed custody of the parties' minor child, and the plaintiff had moved the minor child to North Carolina. For these reasons, we distinguish the instant case from *Miller*.

In sum, we conclude that the record supports the conclusion that defendant purposefully availed himself of the benefits and protections of this State's laws. Defendant's contacts with North Carolina clearly exceed the "minimum contacts" required for the exercise of personal jurisdiction such that he should have reasonably been expected to be haled into court in this State. Thus, defendant's right to due process is not violated by this State's exercise of personal jurisdiction over him for purposes of plaintiff's action in the instant case.

For the reasons stated herein, we affirm the trial court's denial of defendant's motion to dismiss.

Affirmed.

Judges WALKER and McGEE concur.