IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-539

Filed 5 March 2025

New Hanover County, No. 24CVD000152

L.Z., a minor by his
Guardian ad Litem DEMI-LEE ZIEGLER, Plaintiff,

v.

JAY DEREK ZIEGLER, Defendant.

_____

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-536

New Hanover County, No. 24CVD000153

A.J.Z., a minor by her
Guardian ad Litem DEMI-LEE ZIEGLER, Plaintiff,

v.

JAY DEREK ZIEGLER, Defendant.

Appeal by defendant from order entered 8 February 2024 by Judge Melinda H. Crouch in New Hanover County District Court. Heard in the Court of Appeals 30 January 2025.

*Rice Law, PLLC, by Richard Forrest Kern, for defendant-appellant.*

*No brief was submitted for plaintiffs-appellees.*

FLOOD, Judge.

Defendant Jay Derek Ziegler appeals from the trial court's order denying Defendant's motion to dismiss for lack of personal jurisdiction and entering a domestic violence protective order (the "DVPO") against Defendant. On appeal, Defendant argues that visiting his children in North Carolina and participating in his child custody modification action does not grant a North Carolina trial court the power to exercise personal jurisdiction over him. Upon review, we conclude the trial court did not err in finding it had personal jurisdiction over Defendant where, in addition to and in the context of the child custody modification proceeding, Defendant was alleged to have committed domestic violence actions towards his minor children who reside in North Carolina, and Defendant obtained legal representation in North Carolina for the child custody modification and domestic violence actions.

## I. **Factual and Procedural Background**

Defendant is the biological father of Plaintiffs A.J.Z. and L.Z.,[1] both minor children. Defendant and Plaintiffs' mother, who is also Plaintiffs' guardian ad litem (the "GAL") in the present matter, were married and living together along with Plaintiffs in Hamilton, Tennessee, where Defendant was working as a law

---

[1] Pseudonyms are used to protect the identity of the minor children and for ease of reading. *See* N.C.R. App. P. 42(b).

enforcement officer. In 2021, Defendant and Plaintiffs' mother separated, and Plaintiffs' mother moved with her children to New Hanover, North Carolina, while Defendant remained in Tennessee.

On 20 July 2023, Plaintiffs' mother, as the GAL, filed a petition to register the parties' child custody order, which had been previously granted in Tennessee (the "Tennessee Child Custody Order"), in the New Hanover County District Court. The trial court entered an order confirming the registration of the Tennessee Child Custody Order in North Carolina. On 28 August 2023, the GAL filed a motion in the district court to modify the Tennessee Child Custody Order (the "custody modification action"). Defendant filed a response and a motion to stay the matter pending resolution of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA"), and filed a motion for communication between the Tennessee and North Carolina courts pursuant to the UCCJEA.

The Tennessee Circuit Court of Hamilton County (the "Tennessee circuit court") held a telephone conference on 26 October 2023 with both parties' counsel present to discuss jurisdiction of the custody matter. On 2 November 2023, the Tennessee circuit court entered an order relinquishing jurisdiction to North Carolina for the custody modification action per the UCCJEA, but retaining jurisdiction of the ongoing child support matter.

Following a visitation period that took place in Tennessee, Defendant met with Plaintiffs' mother in Georgia on 26 December 2023 to return the children to her. After

exchanging the children, Plaintiffs' mother visited a restroom and later alleged she had discovered, when in that restroom, a "red swollen marking" on her daughter's bottom, and that her son had a "bruise on his face and a burn on his leg." Defendant is also "alleged to have put horrible tattoos all over the children's bodies even after being told by [a] therapist not to do so" and to have "handcuffed" the children in the past.

On 16 January 2024, Plaintiffs' mother, as the GAL, filed a complaint and motion in the district court for an *ex parte* DVPO on behalf of the minor children against Defendant. On 26 January 2024, Defendant filed a motion to dismiss the complaint and challenged the *ex parte* DVPO for lack of personal jurisdiction. Additionally, Defendant also filed motions to compel discovery, a motion for North Carolina and Tennessee Department of Social Services ("DSS") records, and a motion for hospital records.[2]

On 9 February 2024, the trial court made the following pertinent findings with respect to Defendant's activity in and contacts with North Carolina:

> 4. [Plaintiffs] have resided in North Carolina with their mother. . . herein since 2021. [] Defendant has known the children and their mother have been in North Carolina since that time.
>
> 5. North Carolina is the "home state" for purposes of the UCCJEA as the children have resided in North Carolina since 2021 and continue to reside here.

---

[2] The trial court noted Defendant had filed these motions, but they are not before us nor further mentioned in the Record.

6. Plaintiff[s' mother] filed a Petition for Registration of a Foreign Custody Order in New Hanover County file number 23 CVD 2432 on July 20, 2023. She filed a Motion to Modify Custody on August 28, 2023[,] and an Order Confirming Registration was entered by [the trial court] on September 14, 2023.

. . . .

10. [] Defendant has been to North Carolina on several occasions to visit his children and attend a dance recital.

11. [] Defendant has entered into a contract in North Carolina to hire his attorney to represent him in the custody action and the domestic violence actions.[3]

12. Defendant is aware that the children's doctors and therapist are in North Carolina[.]

13. [] Defendant is aware that the children are in school in North Carolina, and he has access to the schools.

14. Defendant is aware that there is an open [DSS] investigation in North Carolina and Tennessee.

15. Defendant is aware that there is an investigation by law enforcement in North Carolina into Plaintiff[s'] claims concerning domestic violence that is the subject of this action and Defendant testified that law enforcement in Tennessee has conducted prior investigations in Tennessee.

. . . .

17(c). [] Defendant has never lived in the State of North Carolina.

---

[3] The Record does not indicate when this contract was entered or provide further information regarding the contract.

. . . .

19. The only contact that [] Defendant maintains he has had with the State of North Carolina arises from the visits he has made to see his children and of child custody and domestic violence litigation in this State.

20. Witnesses to the alleged incidents of domestic violence may exist in both North Carolina and the State of Tennessee[.]

. . . .

23. Defendant would know or would have reason to know that actions toward his children that could be deemed domestic violence would be fair game for the courts of this state to adjudicate especially since this court has already assumed jurisdiction to determine custody.

Based on these findings, the trial court concluded:

5. Defendant could reasonably foresee that actions that may be deemed domestic violence towards his children would be the subject of his custody action in North Carolina as well as actions under the North Carolina domestic violence statute as this court is required to determine whether the minor children have been subjected to domestic violence in determining the children's best interests.

6. This [c]ourt can exercise personal jurisdiction over [D]efendant as an out of state defendant based on [D]efendant's awareness and the fact that he could have "reasonably anticipate[d]" his actions would connect him to the state of North Carolina. [*Mucha*], 378 N.C. at 174.

The trial court denied Defendant's motion to dismiss for lack of personal jurisdiction and entered a DVPO against Defendant. Defendant timely appealed.

## II. Jurisdiction

This Court has jurisdiction to hear Defendant's appeal pursuant to N.C.G.S. § 1-277(b), which provides that "[a]ny interested party has the right of immediate appeal from an adverse ruling as to the jurisdiction of the trial court over the person or property of the defendant[.]" N.C.G.S. § 1-277(b) (2023); *see also Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 614 (2000) ("The denial of a motion to dismiss for lack of jurisdiction is immediately appealable." (citation omitted)).

## III. <u>Standard of Review</u>

"The standard of review on appeal of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record." *Bartlett v. Est. of Burke*, 285 N.C. App. 249, 256 (2022) (citation omitted) (cleaned up). "We review de novo the issue of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over a defendant." *Id.* at 256 (citation omitted) (cleaned up). Under a de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33 (2008). Additionally, "unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *In re R.D.B.*, 274 N.C. App. 374, 379–80 (2020) (citation omitted) (cleaned up).

## IV. <u>Analysis</u>

On appeal, Defendant argues the trial court lacked personal jurisdiction over him, contending that by visiting his children in the forum state and participating in

the custody modification action, he did not establish sufficient minimum contacts with the State of North Carolina to satisfy due process. We disagree and conclude Defendant's alleged domestic violence towards his children, the alleged violence as it pertains to the custody modification action, and Defendant's representation in both actions in North Carolina, establish sufficient minimum contacts necessary for the trial court's exercise of personal jurisdiction over Defendant.

## A. Due Process

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, ___U.S. ___, 141 S. Ct. 1017, 1024 (2021). A trial court must have either general or personal jurisdiction over a defendant in domestic violence actions. *See Mucha v. Wagner*, 378 N.C. 167, 177 (2021). Here, the trial court did not find it had general jurisdiction over Defendant, and thus, we will consider only whether the trial court had personal jurisdiction over Defendant.

For North Carolina courts to exercise personal jurisdiction over a nonresident defendant, "(1) there must be statutory authority for the exercise of jurisdiction, and (2) the nonresident defendant must have sufficient contacts with this State such that the exercise of jurisdiction does not violate the federal due process clause." *Bruggeman*, 138 N.C. App. at 614–15.

North Carolina's Long Arm Statute, N.C.G.S. § 1-75.4 (2023), "grants North Carolina's courts specific personal jurisdiction over defendants to the extent allowed

by due process.*"* *Bartlett v. Est. of Burke*, 285 N.C. App. 249, 256 (2022) (citation omitted) (cleaned up). Our Long Arm Statute provides, in relevant part, that a trial court will have personal jurisdiction over a nonresident defendant if that defendant "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C.G.S. § 1-75.4(1)(d) (2023). "[W]hen evaluating the existence of personal jurisdiction pursuant to [N.C.]G.S. § 1– 75.4(1)(d), the question of statutory authorization collapses into the question of whether the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Bruggeman*, 138 N.C. App. at 617 (citation omitted) (cleaned up).

We therefore proceed to the due process inquiry, considering whether the trial court had personal jurisdiction over Defendant based on his contacts with North Carolina.

### B. Personal Jurisdiction and Minimum Contacts

In order to satisfy due process, "the defendant must 'have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Mucha*, 378 N.C. at 171 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Our courts look at the following factors in determining whether minimum contacts exist:

> (1) the quantity of the contacts, (2) the nature and quality
> of the contacts, (3) the source and connection of the cause
> of action to the contacts, (4) the interest of the forum state,

and (5) the convenience to the parties.
*Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 696 (2005) (citation omitted). "To ascertain whether a defendant's contacts are of the frequency and kind necessary to surpass the 'minimum contacts' threshold, courts must first examine whether the defendant has taken 'some act by which [they] *purposefully avail* [themselves] of the privilege of conducting activities within the forum State.'" *Mucha*, 378 N.C. at 171 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A defendant must be aware that they are "establishing a connection with the State of North Carolina. This awareness—whether actual or imputed—is what permits a court in North Carolina to exercise judicial authority over the nonresident defendant." *Mucha*, 378 N.C. at 172. Our Supreme Court has explained that "[a]t a minimum, there must be some evidence from which the court can infer that in undertaking an act, the defendant purposefully established contacts with the State of North Carolina specifically." *Mucha*, 378 N.C. at 180. We now consider Defendant's contacts in North Carolina as they pertain to the custody modification action and the domestic violence action.

Defendant argues the trial court erred in finding he had sufficient minimum contacts, based on his visitation with his children in North Carolina and participating in the custody modification action in North Carolina, so as to establish a connection with the state that would permit a North Carolina court to exercise judicial authority over him.

Our courts have addressed whether sufficient minimum contacts arise from child custody and visitation actions such that personal jurisdiction is established. In *Miller v. Kite,* our Supreme Court considered the issue of whether the trial court had personal jurisdiction over a nonresident parent who was visiting his child. 313 N.C. 474, 479 (1985). After the couple's separation, the defendant's ex-wife had moved their daughter from Illinois to North Carolina, and the defendant, who had never lived in North Carolina, sent child support checks to North Carolina and occasionally visited his child in North Carolina. *Id.* at 475—76. Our Supreme Court held the facts did not establish personal jurisdiction over the defendant, explaining that "the child's presence in North Carolina was not caused by the defendant's acquiescence. Instead, it was solely the result of the plaintiff's decision as the custodial parent to live here with the child[,]" and "unilateral acts by the party claiming a relationship with a non-resident defendant may not, without more, satisfy due process requirements." *Id.* at 479.

Our Supreme Court concluded, "[the] defendant did not purposefully avail himself of the benefits and protections of the laws of this State[,]" and "[a] contrary conclusion would discourage voluntary child custody agreements and subject a non-custodial parent to suit in any jurisdiction where the custodial parent chose to reside." *Id.* at 479. Further, the Court acknowledged "that the presence of the child and one parent in North Carolina might make this State the most convenient forum for the action[,]" but "[t]his fact . . . does not confer personal jurisdiction over a non-resident

defendant." *Id.* at 479. Additionally, a nonresident "defendant's general appearance in the child custody and support action" does not establish sufficient minimum contacts but is a "submission to jurisdiction in that action only and does not waive his right to object to jurisdiction in separate causes of action." *Buck v. Heavner*, 93 N.C. App. 142, 146 (1989).

Here, the trial court made several findings of fact pertaining to Defendant's custody modification action and visitation, which Defendant does not challenge on appeal. Findings of Fact 4, 5, and 6 identify that Plaintiffs' mother unilaterally moved the minor children to North Carolina, they have lived in North Carolina since 2021, and there is an ongoing custody modification action taking place in North Carolina. Findings of Fact 10, 11, and 17 reveal that Defendant, who has never lived in North Carolina, has occasionally visited North Carolina in order to visit with his children, and that he hired a North Carolina attorney to represent him in the custody modification action. Findings of Fact 12 and 13 state Defendant is aware that the children are in school in North Carolina, he has access to the schools, and he is aware the children's doctors and therapist are in North Carolina. Additionally, Finding of Fact 19 reveals that the only contact "Defendant maintains he has had with the State of North Carolina arises from the visits he has made to see his children and of child custody and domestic violence litigation in this State."

Similar to the situation in *Miller* where "the child's presence in North Carolina . . . was solely the result of the plaintiff's decision as the custodial parent to live here

with the child[,]" Defendant's children were present in North Carolina solely as the result of Plaintiffs' mother's decision as the custodial parent to live in North Carolina with the children. *See Miller*, 313 N.C. at 479. Defendant's visitation with his children in North Carolina and his participation in the custody modification action, without more, would fail to establish sufficient minimum contacts to meet due process standards.

Here, however, there is more, where the trial court's consideration of Defendant's interaction with his children was not isolated to the issues of custody and visitation, but rather was in the context of the custody modification action, which necessarily included consideration of the domestic violence action against Defendant. *See Miller*, 313 N.C. at 479; *see also Buck*, 93 N.C. App at 146.

The trial court made multiple findings of fact regarding Defendant's alleged domestic violence, which Defendant left unchallenged. Findings of Fact 11 and 12 show that Defendant hired a North Carolina attorney to represent him in the domestic violence action, and he knows his children's doctor and therapist are in North Carolina, where the children receive medical and emotional care. Findings of Fact 14 and 15 reveal Defendant is aware that there is an open DSS investigation in North Carolina and in Tennessee, and he is aware there is an investigation by North Carolina law enforcement officers into the domestic violence action. Additionally, the trial court found in Finding of Fact 20 that witnesses to actions of domestic violence may exist in both North Carolina and Tennessee, while medical providers in North

Carolina could also be witnesses. The trial court further found in Finding of Fact 23: "Defendant would know or would have reason to know that actions toward his children that could be deemed domestic violence would be fair game for the courts of this state to adjudicate especially since this court has already assumed jurisdiction to determine custody."

Based on these unchallenged, and thus binding findings of fact, *see In re R.D.B.*, 274 N.C. App. at 379–80, we discern no error with the trial court's Conclusion of Law 5 because Defendant could "reasonably foresee" that his alleged domestic violence towards his children, in the context of the custody modification action and under North Carolina's domestic violence statute, would be a necessary consideration for the trial court's best interest of the child analysis. Further, we discern no error with Conclusion of Law 6, where Defendant could have "reasonably anticipate[d]" his actions would connect him to the state. *See Mucha*, 378 N.C. at 174; s*ee also Int'l Shoe Co.*, 326 U.S. at 316 (establishing the minimum contacts test required for due process). By committing actions that may be deemed domestic violence towards his minor children whose custody modification was under consideration by the trial court in this State, and by hiring a North Carolina attorney to represent him in the domestic violence action, Defendant "purposefully avail[ed]" himself of the benefits and protections of the laws of this State. *See Mucha*, 378 N.C. at 171.

Upon de novo review, we conclude the trial court's findings of fact support its conclusions of law, and Defendant established sufficient minimum contacts with the

State to confer personal jurisdiction of the trial court over Defendant, thus satisfying due process. *See Bartlett*, 285 N.C. App. at 256; *see also Mucha*, 378 N.C. at 172; *Int'l Shoe Co.*, 326 U.S. at 316.

## V. <u>Conclusion</u>

In the context of his participation in the child custody modification action, Defendant's alleged domestic violence towards his minor children, who reside in North Carolina, and Defendant's representation for custody and domestic violence actions in North Carolina, establish sufficient minimum contacts necessary for the trial court's exercise of personal jurisdiction so as to satisfy due process.

AFFIRMED.

Judges HAMPSON and STADING concur.