BETTY L. TALBERT, ADMINISTRATRIX OF THE ESTATE OF OLLIE JUNIOR CHOPLIN, DECEASED v. GEORGE DWIGHT CHOPLIN

No. 7810SC334

(Filed 20 March 1979)

Automobiles § 66.1— *identity of driver—plaintiff's reliance on complaint*—summary judgment

   In a wrongful death action where plaintiff alleged that her intestate was killed while a passenger in a car driven by defendant, the trial court properly entered summary judgment for defendant where defendant offered in support of his motion his own sworn statements that he was not the driver of the vehicle when the fatal accident occurred, and plaintiff rested upon the mere allegation to the contrary in her complaint; moreover, plaintiff could not have her verified complaint treated as an affidavit since it failed to show affirmatively that plaintiff was competent to testify concerning the identity of the driver.

APPEAL by plaintiff from *McLelland, Judge.* Judgment entered 9 March 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 19 January 1979.

This wrongful death action was commenced 15 July 1977 when the plaintiff administratrix filed a verified complaint alleg-

ing that her intestate, Ollie Junior Choplin, was killed on 23 May 1976 while a passenger in a car driven by the defendant and that the death was proximately caused by negligence of the defendant. The car was owned by Deborah Talbert Choplin, the wife of plaintiff's intestate. Plaintiff alleged that defendant, while under the influence of intoxicating liquor, drove the car at a high rate of speed off of the road, throwing her intestate from the vehicle and killing him.

The defendant filed answer denying the material allegations in plaintiff's complaint and alleging contributory negligence on the part of plaintiff's intestate in continuing to ride in the automobile with defendant without protest when he knew, or in the exercise of due care should have known, that the manner in which the automobile was being operated would likely cause him injury. Defendant also alleged that at the time of the accident plaintiff's intestate was married and living with the owner of the car, Deborah Talbert Choplin, that the car was a family purpose automobile, and that plaintiff's intestate was an occupant in his wife's family purpose automobile and had the right to exercise control and discretion over its operation. In his answer defendant did not admit that he was driving the car at the time of the accident.

In verified answers to plaintiff's interrogatories, defendant described the events leading up to the fatal accident as follows:

On the morning of May 22, 1976, Ollie Junior Choplin came to my house requesting that I fix a headlight and brakes on the car. Thereafter, I went to my mother's house where I started working on the car. After fixing the car, Ollie and I went and tried out the car and we were together until the accident occurred. We drove around that day and then went to Pierce's Service station where we had a beer. We then left Pierce's Service station and went to Raleigh to an ABC store where we bought the bottle of liquor. We then left Raleigh and headed back to Pierce's Service station. On the way back from Raleigh, we stopped and had a drink. We then arrived at Pierce's Service about 10:00 or 10:30 that evening where we met our wives at the service station. When we arrived at Pierce's, we stayed for a while and then left and went to the 401 Tavern for a fan belt. After leaving

the 401 Tavern, we went out Highway 401 to Rolesville, took a left and went out Rural Paved Road 2051 where we stopped to go to the bathroom and to take a drink. We got back into the car with Ollie Junior Choplin driving—shortly thereafter we had the accident.

\*     \*     \*

I never had a conversation with Deborah Talbert Choplin as such. Deborah Talbert Choplin can only converse through sign language. She never gave me express permission to drive the car. When Ollie and I left my mother's house after fixing the car at about noon on May 22, 1976, I believe Ollie Junior Choplin told his wife that we are going to go try the car out to test the brakes. Later when we met our wives at Pierce's Service station that evening, Ollie Junior Choplin and Deborah said something to each other in sign language about us going off in the car.

\*     \*     \*

I operated the 1965 Pontiac automobile upon leaving my mother's house about noon on May 22, 1976. I operated the car that afternoon just driving around and drove it to Pierce's Service station. Ollie Junior Choplin drove the car the back way to Raleigh to avoid Highway Patrolman on our trip to the liquor store. I drove the car back from Raleigh to Pierce's Service station where we met our wives. I drove the car then from Pierce's Service station to the 401 Tavern. I drove the car from the 401 Tavern until we stopped on Rural Paved Road 2051 to go to the bathroom and to take another drink. Ollie Junior Choplin then drove the car until we had the accident. From the time I left my mother's house at noon on May 22, 1976 until the accident occurred, Ollie Junior Choplin and I were the occupants in this car.

\*     \*     \*

At the time of the accident, neither Ollie Junior Choplin or I were drunk but I would admit that we were both under the influence of intoxicating beverages.

\*     \*     \*

I was not driving the car at the time of the accident. After Ollie and I stopped on Rural Paved Road 2051 to go to the bathroom and to have another drink, Ollie then started driving the car. At the time of the accident, Ollie was driving at about 70 miles an hour when he came to a sharp curve whereupon the car started sliding and we had the accident. The next thing I remember was being in the hospital.

* * *

I had known for some time that Ollie did not have an operator's license. I do not know for sure but I believe he had had his license revoked for approximately a year or maybe more. He actually served time after being convicted of driving without a license.

On 11 January 1978 defendant filed a motion for summary judgment, supporting his motion by his sworn answers to plaintiff's interrogatories. Plaintiff did not file any additional material in opposition to the motion. The court granted defendant's motion, and plaintiff appealed.

*DeMent, Redwine & Askew by Russell W. DeMent, Jr., for plaintiff appellant.*

*Ronald C. Dilthey for defendant appellee.*

PARKER, Judge.

"The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E. 2d 419, 422 (1979). "The device used is one whereby a party may in effect force his opponent to produce a forecast of evidence which he has available for presentation at trial to support his claim or defense. A party forces his opponent to give this forecast by moving for summary judgment. Moving involves giving a forecast of his own which is sufficient, if considered alone, to compel a verdict or finding in his favor on the claim or defense. In order to compel the opponent's forecast, the movant's forecast, considered alone, must be such as

to establish his right to judgment as a matter of law." 2 McIntosh, N.C. Practice and Procedure, § 1660.5 (2nd ed. Phillips Supp. 1970).

"In ruling on a motion for summary judgment, the Court does not resolve issues of fact but goes beyond the pleadings to determine whether there is a genuine issue of material fact. The moving party has the burden of establishing the absence of any triable issue, and the Court in considering the motion carefully scrutinizes the papers of the moving party and, on the whole, regards those of the opposing party with indulgence. This burden may be carried by movant by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim. If the moving party meets this burden, the party who opposes the motion for summary judgment must either assume the burden of showing that a genuine issue of material fact for trial does exist or provide an excuse for not so doing." *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 29, 209 S.E. 2d 795, 798 (1974).

Applying these principles in the present case, defendant, as the party moving for summary judgment, had the burden of establishing the lack of any genuine issue of material fact and that he was entitled to judgment as a matter of law. To meet this burden he presented proof in the form of his own sworn statements that he was not the driver of the car in which plaintiff's intestate was riding when the fatal accident occurred. This evidence was sufficient, if considered alone, to compel a verdict in defendant's favor establishing his right to judgment as a matter of law. Plaintiff was thereby forced to produce a forecast of the evidence which she had available for presentation at trial to support her claim. She produced none. Instead, she relied solely upon the allegations in her verified complaint and upon what she contends are weaknesses in defendant's statements which undermined his credibility. This was not sufficient. G.S. 1A-1, Rule 56(e) provides as follows:

> (e) *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the af-

fiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Defendant, having supported his motion for summary judgment by his own sworn statements that he was not the driver, a matter concerning which he was competent to testify, G.S. 8-51, as amended effective 1 July 1977 by Ch. 74, Sec. 2, 1977 Session Laws, plaintiff could not rest upon the mere allegation to the contrary in her complaint. Although the complaint was verified by Betty L. Talbert and in this respect might be considered as an affidavit, it failed to show affirmatively that the affiant was competent to testify concerning the identity of the driver. Unless she was present when the accident occurred, which is not alleged in the complaint, it is manifest that she was not competent to testify as to who was driving. The verified complaint, therefore, failed to meet the requirements for an affidavit to be considered under Rule 56(e). We are thus left with a record which shows that defendant is prepared to present at trial competent sworn testimony to show that he was not the driver while plaintiff, who at trial would have the burden of proof, can present nothing to show that he was. The mere fact that the jury might not believe the defendant hardly furnishes proof for the plaintiff. It is true that the identity of the driver of an automobile at the time of an accident may be established by circumstantial evidence. *Greene v. Nichols*, 274 N.C. 18, 161 S.E. 2d 521 (1968); *King v. Bonardi*, 267 N.C. 221, 148 S.E. 2d 32 (1966); *Drumwright v. Wood*, 266 N.C. 198, 146 S.E. 2d 1 (1966); *Yates v. Chappell*, 263 N.C. 461, 139 S.E. 2d 728 (1965); Annot., 32 A.L.R. 2d 988 (1953). However, if in the present case the circumstances at the scene of the accident, such as the positions in which defendant's body and that of plaintiff's intestate

were found after the wreck, or any other circumstances exist to
furnish a logical basis for a finding that defendant was the driver,
plaintiff has failed to come forward with anything to indicate that
she has or can ever obtain competent evidence to show them. The
record does not disclose any attempt by plaintiff to utilize Rule
56(f) to oppose defendant's motion. On this record, therefore,
defendant's motion for summary judgment was properly allowed.

Affirmed.

Judges ARNOLD and WEBB concur.