ADAMS, KLEEMEIER, HAGAN, HANNAH & FOUTS, PLLC, PLAINTIFF V. ROBERT JACOBS AND ELLIOT JACOBS AND DAVID QUELLER AND IRA BORN, DEFENDANTS

No. COA02-789

(Filed 17 June 2003)

**Jurisdiction— personal—minimum contacts—legal representation**

The trial court did not err by dismissing, based on lack of personal jurisdiction, plaintiff law firm's breach of contract and quantum meruit action arising out of nonresident defendants' alleged failure to pay plaintiff for legal services performed for defendants on appeal, because: (1) plaintiff's unsolicited letters to defendants that expressly conditioned representation upon defendant's agreement to plaintiff's financial terms do not establish the existence of an implied contract for legal representation when defendants neither responded to these letters nor sent plaintiff any money; (2) in the absence of any evidence of an express or implied contract between plaintiff and defendants, plaintiff has no right to recovery in quantum meruit; and (3) the bulk of plaintiff's allegations consist of a recitation of unilateral activity on its part which are insufficient to establish minimum contacts.

Judge WYNN dissenting.

_____

ADAMS, KLEEMEIER, HAGAN, HANNAH & FOUTS, PLLC v. JACOBS

[158 N.C. App. 376 (2003)]

Appeal by plaintiff-appellant from order entered 20 March 2002 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 19 February 2003.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by J. Alexander S. Barrett, for plaintiff-appellant.*

*Davis & Harwell, P.A., by Fred R. Harwell, Jr., and Caleigh H. Evans, for defendants-appellees David Queller and Ira Born.*

LEVINSON, Judge.

Plaintiff (law firm of Adams, Kleemeier, Hagan, Hannah & Fouts, hereafter 'Adams, Kleemeier') appeals from an order granting a motion by defendants (David Queller and Ira Born) to dismiss plaintiff's suit for lack of personal jurisdiction. We affirm.

The pertinent facts are summarized as follows: Born and Queller, both residents of Florida, are two of eleven defendants named in *New Horizon of NY, LLC v. Robert Jacobs, et al.*, 5:97-CV-126-BR(2) (EDNC). During the course of litigation, the *New Horizon* defendants hired the law firm of Patton Boggs, LLP, which at that time had offices in Washington, D.C.; Dallas, Texas; and Raleigh and Greensboro, North Carolina. Patton Boggs attorneys Read McCaffrey of the Washington office, and Steven Hedges of the Greensboro office, participated in the *New Horizon* trial, conducted in Raleigh, North Carolina. In mid July, 1999, judgment was returned against the *New Horizon* defendants in federal district court in the amount of $21,000,000.00. A week after the verdict, Patton Boggs closed its North Carolina offices. McCaffrey remained with the Patton Boggs office in Washington, D.C., while Hedges joined Greensboro law firm Adams, Kleemeier, plaintiff herein.

The contract between Patton Boggs and the *New Horizon* defendants did not include representation on appeal. Following the trial, Patton Boggs remained counsel of record for the *New Horizon* defendants until November, 1999. On 29 July 1999, McCaffrey wrote defendant Born and informed him that Hedges had left Patton Boggs and was working for a different law firm. Between July and October 1999, Hedges sent defendants Born and Queller several unanswered letters on behalf of Adams, Kleemeier, proposing that defendants hire plaintiff to provide appellate representation and suggesting various terms and payment arrangements. However, the record indicates that on appeal to the 4th Circuit Court of Appeals, defendants were represented by attorneys from three other law firms: Miller, Cassidy,

Larroca & Lewin, L.L.P., Washington, D.C. ('Miller, Cassidy'); Smith, Helms, Mullis & Moore, Raleigh, N.C. ('Smith, Helms'); and Blanchard, Jenkins & Miller, P.A., Raleigh, N.C. *See New Horizon of NY LLC v. Jacobs*, 231 F.3d 143 (4th Cir. 2000), *cert. denied*, 532 U.S. 1052, 149 L. Ed. 2d 1024 (2001).

On 25 September 2001, plaintiff filed suit against defendants and co-defendants Robert and Elliott Jacobs; the present appeal concerns only defendants Born and Queller. Plaintiff alleged that it had been hired to represent defendants on appeal and had performed legal services for defendants for which it had not been paid. Plaintiff asserted claims for breach of contract and damages in *quantum meruit*, and sought damages of $33,020.19 from Queller, and $18,527.75 from Born, as well as costs and attorney's fees. On 5 February 2002, defendants filed a motion to dismiss plaintiff's complaint under N.C.G.S. § 1A-1, Rule 12(b)(2), for lack of personal jurisdiction. Defendants submitted accompanying affidavits and copies of the letters that plaintiff had sent them. On 5 March 2002, Hedges executed an affidavit in support of plaintiff's opposition to the dismissal motion, accompanied by copies of letters sent to defendants. On 20 March 2002, the trial court entered an order dismissing plaintiff's claim against defendants for lack of personal jurisdiction. From this order plaintiff appeals.

---

Plaintiff argues that by dismissing its complaint for lack of personal jurisdiction, the trial court committed reversible error. We disagree.

"Jurisdiction has been defined as 'the power to hear and to determine a legal controversy; to inquire into the facts, apply the law, and to render and enforce a judgment[.]' " *High v. Pearce*, 220 N.C. 266, 271, 17 S.E.2d 108, 112 (1941) (quoting McIntosh, Practice and Procedure, sec. 5) (citations omitted). "Personal jurisdiction refers to the Court's ability to assert judicial power over the parties and bind them by its adjudication." *Japan Gas Lighter Asso. v. Ronson Corp.*, 257 F. Supp. 219, 224 (D.N.J. 1966). A trial court ruling on the defendant's challenge to the exercise of personal jurisdiction may either (1) decide the matter based on affidavits, or (2) conduct an evidentiary hearing with witness testimony or depositions. N.C.G.S. § 1A-1, Rule 43(e) (2001). Either way, "[t]he burden is on the plaintiff to prove by a preponderance of the evidence that grounds exist for the exercise of personal jurisdiction over a defendant." *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 671, 541 S.E.2d 733, 736 (2001); *Murphy*

*v. Glafenhein*, 110 N.C. App. 830, 431 S.E.2d 241, *disc. review denied*, 335 N.C. 176, 436 S.E.2d 382 (1993). Moreover, "when the defendant supplements its motion [for dismissal] with affidavits or other supporting evidence, the allegations of the plaintiff's complaint 'can no longer be taken as true or controlling and plaintiff[] cannot rest on the allegations of the complaint,' but must respond 'by affidavit or otherwise . . . setting forth specific facts showing that the court has jurisdiction.' " *Wyatt v. Walt Disney World Co.*, 151 N.C. App. 158, 163, 565 S.E.2d 705, 708 (2002) (quoting *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615-16, 532 S.E.2d 215, 218, *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000)) (citation omitted).

The trial court's determination regarding the existence of grounds for personal jurisdiction is a question of fact. *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 519 S.E.2d 317 (1999). " 'The standard of [appellate] review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.' " *Wyatt*, 151 N.C. App. at 163, 565 S.E.2d at 708 (quoting *Replacements, Ltd. v. Midwesterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999)). "Where no findings are made, proper findings are presumed, and our role on appeal is to review the record for competent evidence to support these presumed findings." *Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217-18 (citing *Sherwood v. Sherwood*, 29 N.C. App. 112, 223 S.E.2d 509 (1976)).

In its determination regarding the existence of personal jurisdiction, the trial court undertakes a two part analysis.

First, the North Carolina long-arm statute must permit the exercise of personal jurisdiction. Second, the exercise of personal jurisdiction must comport with the due process clause of the Fourteenth Amendment of the United States Constitution. 'However, when personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts necessary to meet the requirements of due process.'

*Filmar Racing*, 141 N.C. App. at 671, 541 S.E.2d at 736 (quoting *Hiwassee Stables*, 135 N.C. App. at 27, 519 S.E.2d at 320) (citations omitted).

N.C.G.S. § 1-75.4 (2001), North Carolina's "long-arm statute," confers jurisdiction over non-residents. In the instant case, plaintiff did not reference G.S. § 1-75.4 in its complaint. However, "[t]he failure to plead the particulars of jurisdiction is not fatal to the claim so long as the facts alleged permit the inference of jurisdiction under the statute." *Williams v. Institute for Computational Studies*, 85 N.C. App. 421, 428, 355 S.E.2d 177, 182 (1987). On appeal, plaintiff argues that statutory authority for the assertion of personal jurisdiction exists under N.C.G.S. § 1-75.4(5), which, in pertinent part, confers jurisdiction on actions:

> a. Aris[ing] out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

> b. Aris[ing] out of services . . . actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant[.] . . .

N.C.G.S. § 1-75.4(5)(a) and (b) (2001). Plaintiff alleges that it performed legal services for defendants, and that defendants either authorized or promised to pay for these services. We conclude plaintiff has asserted sufficient facts to support a statutory basis for the exercise of personal jurisdiction over defendants. We next consider whether minimum contacts consistent with constitutional principles exist.

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert *in personam* jurisdiction over a non-resident defendant." *Hiwassee Stables*, 135 N.C. App. at 28, 519 S.E.2d at 320 (citing *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 413, 80 L. Ed. 2d 404, 410 (1984)). The pivotal inquiry for a court's determination of whether the exercise of personal jurisdiction comports with due process is whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)) (citation omitted).

"In addition, '[t]he United States Supreme Court has noted two types of long-arm jurisdiction: 'specific jurisdiction,' where the controversy arises out of the defendant's contacts with the forum state, and 'general jurisdiction,' where the controversy is unrelated to the

defendant's activities within the forum, but there are 'sufficient contacts' between the forum and the defendant.' " *Wyatt*, 151 N.C. App. at 165, 565 S.E.2d at 709 (quoting *Helicopteros*, 466 U.S. at 414, 80 L. Ed. 2d at 411). "General jurisdiction exists where the defendant has continuous and systematic contacts with the forum state[.]" *Wyatt*, 151 N.C. App. at 165, 565 S.E.2d at 710 (citing *Frisella v. Transoceanic Cable Ship Co.*, 181 F. Supp. 2d 644, 647 (E.D. La. 2002)). In the instant case, plaintiff does not assert the presence of general jurisdiction, and we find no basis for its existence. We turn, therefore, to the question of whether grounds exist for the exercise of specific jurisdiction.

"North Carolina exercises specific jurisdiction over a party when it exercises personal jurisdiction in a suit arising out of that party's contacts within the state." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 114, 516 S.E.2d 647, 650 (1999). "To effectuate minimum contacts, a defendant must have acted to purposefully avail itself of the privileges of conducting activities within this State, thus invoking the benefits and protection of our laws." *Bates v. Jarrett*, 135 N.C. App. 594, 597, 521 S.E.2d 735, 736 (1999) (citing *International Shoe*, 326 U.S. at 319, 90 L. Ed. at 103).

> The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or . . . 'unilateral activity of another party or a third person[.]' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 79 L. Ed. 2d 790, 797 (1984), and *Helicopteros*, 466 U.S. at 417, 80 L. Ed. 2d at 413). Therefore, "[t]he significant contacts considered are those actually generated by the defendant. It is firmly established that 'the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' . . . Jurisdiction may not be manufactured by the conduct of others." *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127 (4th Cir.) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958)), *cert. denied*, 479 U.S. 948, 93 L. Ed. 2d 381 (1986).

Preliminarily, we note that plaintiff argues in its brief that personal jurisdiction is proper in part because "Queller made a partial

payment to [plaintiffs] in North Carolina." However, plaintiff has since submitted an exhibit to this Court, retracting this argument and stating this earlier allegation was "an inadvertent misstatement." Accordingly, we have disregarded plaintiff's earlier statements on this matter, and our holding in this case is not based in any respect on the assertion in plaintiff's brief that Queller had made a partial payment to plaintiff for appellate legal services.

Plaintiff argues on appeal that co-defendant Robert Jacobs "authorized and directed [plaintiff], on behalf of himself and [defendants], to perfect the appeal, preserve all appellate rights and handle a wide range of post-judgment motions and other matters." However, both defendants flatly contradicted this assertion in their affidavits, each of which stated that:

> Robert Jacobs is not now and never has been my agent for any purpose associated with the New Horizon case. Robert Jacobs is not now and never has been authorized to deal with Adams Kleemeier or Mr. Hedges as my agent or to retain Adams Kleemeier or Mr. Hedges to represent me.

Plaintiff offers no documentary or other evidentiary support of its claim that Robert Jacobs was authorized to contract on behalf of defendants. Nor does Hedges' affidavit include any reference to Robert Jacobs' acting on behalf of defendants. Instead, plaintiff relies solely upon assertions in its verified complaint, which plaintiff contends must be treated as an affidavit. On this basis, plaintiff argues that defendants' affidavits "do[] nothing more than create a factual dispute, which must be resolved in [plaintiff's] favor for purposes of [defendants'] [m]otion to [d]ismiss." Plaintiff misapprehends the law in this regard.

It is true that a " 'verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein.' " *Spinks v. Taylor and Richardson v. Taylor Co.*, 303 N.C. 256, 264, 278 S.E.2d 501, 506 (1981) (quoting *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972)). However, the allegations in plaintiff's complaint regarding Robert Jacob's authority to act on behalf of defendants "meet[] neither the first nor the third requirements of the rule for affidavits and therefore may not be considered." *Page*, 281 N.C. at 705, 690 S.E.2d at 194; *see also Talbert v. Choplin*, 40 N.C. App. 360, 365, 253 S.E.2d 37, 41 (1979) (verified affidavit that failed to establish that

ADAMS, KLEEMEIER, HAGAN, HANNAH & FOUTS, PLLC v. JACOBS

[158 N.C. App. 376 (2003)]

plaintiff was competent to testify to matter asserted had "failed to meet the requirements for an affidavit to be considered under Rule 56(e)" and thus could not be considered by the trial court). Because plaintiff failed to offer any evidence, by affidavit or otherwise, that Robert Jacobs entered into a contract on behalf of defendants, this allegation is disregarded in our determination of whether grounds exist for the exercise of personal jurisdiction over defendants.

Plaintiff bases its argument that defendants were subject to personal jurisdiction primarily upon evidence that Hedges "sent Defendants approximately 20 letters on Adams Kleemeier letterhead regarding their case." Plaintiff acknowledges that when the *New Horizon* trial ended, defendants "had not made or conveyed to trial counsel any decisions about appellate representation[,]" and also concedes that defendants "continually and entirely ignored" plaintiff's "repeated and frequent attempts to propose, negotiate and execute a formal written engagement with Defendants for post-trial and appellate services[.]" However, plaintiff argues on appeal that defendants' passive receipt of these letters constitutes the required "minimum contact" between defendants and North Carolina. We disagree.

It is settled law that personal jurisdiction is not created by the unilateral acts of plaintiff. " 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State[.]' " *Miller v. Kite*, 313 N.C. 474, 477, 329 S.E.2d 663, 665 (1985) (quoting *Hanson*, 357 U.S. at 253, 2 L. Ed. 2d at 1298); *see, e.g., Allegiant Physicians Services v. Sturdy Mem. Hosp.*, 926 F. Supp. 1106, 1115 (N.D. Ga. 1996) (personal jurisdiction not proper where defendant "received several unsolicited promotional brochures" from plaintiff before "finally respond[ing] to one of Plaintiff's inquiries"); *Covenant Bank for Sav. v. Cohen*, 806 F. Supp. 52, 55 (D.N.J. 1992) (where record contains "no allegation that defendants solicited or initiated the contact with [plaintiff]," Court finds exercise of personal jurisdiction improper, noting that "plaintiff's unilateral acts, directed to a nonresident defendant, do not create sufficient minimum contacts between the nonresident defendant and the forum"). In the present case, it is uncontroverted that plaintiff's letters to defendants were unsolicited. It is equally undisputed that defendants did not respond to plaintiff's solicitations to provide appellate legal services. We conclude that the mailing by plaintiff of letters to defendants in Florida was not an action *by defendants* directed towards North Carolina, and do not constitute a contact that defendants made with this State.

ADAMS, KLEEMEIER, HAGAN, HANNAH & FOUTS, PLLC v. JACOBS

[158 N.C. App. 376 (2003)]

Plaintiff also asserts the existence of personal jurisdiction based on the contents of the letters it sent to defendants. Plaintiff contends that its letters either established an implied contract for appellate representation, or at least gave rise to an obligation on defendants' part to respond. Our examination of the letters reveals no basis for this assertion.

Plaintiff directs our attention to self-serving excerpts from these letters. For example, plaintiff's letter of 3 August 1999 to defendant Born states that "[y]ou have accepted that I, and [Adams, Kleemeier] will perform the bulk of the work on the New Horizon appeal[.]" There is no evidence in the record supporting this statement, or suggesting that defendant ever accepted plaintiff's proposed terms of engagement. Indeed, the letter also states the following:

> It is critically important that we have your financial commitment to this appeal. . . . *[M]y firm simply will not make an appearance in this appeal without a dependable commitment to the payment of the considerable fees* and expenses. . . . You must bring your account current with Patton Boggs as of July 31, 1999. *I will require a substantial retainer for Adams, Kleemeier. . . .*
>
> . . . .
>
> I understand that you experienced some sticker shock at the $900,000 figure demanded by Read. . . . The history of slow pay to prior lawyers has hurt you and will continue to hurt you. *Adams, Kleemeier will not make the considerable commitment* of resources to obtain a reversal on appeal if you will not give us the financial fuel to do our best on your behalf.

(emphasis added). Plaintiff's letter, which unequivocally warns that it "will not make an appearance in this appeal" absent payment of a "substantial retainer," is properly construed as an offer to provide appellate representation only upon receipt of "a dependable commitment to the payment of the considerable fees[.]" Similar language appears in the other letters included in the record. The 29 July 1999 letter from McCaffrey to defendant Born states, in relevant part, that:

> [Plaintiff] will not allow [this] matter to come in the door without a retainer. . . . [T]o keep [Hedges] involved . . . *we need $900,000.00. . . . This is as low as we can go and still receive permission from firm management to go forward.*

(emphasis added). This was followed by plaintiff's letter of 3 August 1999, discussed above. Plaintiff subsequently wrote to both defendants on 1 September 1999, that

> it is necessary that we establish an agreement to the terms of representation. . . . *The retainer I request to go forward with the appeal is $150,000.00.* . . . Other *terms of our engagement are set forth* on the enclosed term sheet. *We require that you acknowledge acceptance of and agreement to [these] terms* by signing the enclosed copy of this letter and returning same to me . . . along with your contribution [and] the *required retainer."*

(emphasis added). This letter makes clear that as of 1 September 1999, no agreement had been reached regarding plaintiff's retention as appellate counsel. On 16 September 1999, plaintiff again wrote to defendants:

> [P]lease execute my engagement letter forwarded to you on September 1, 1999 and return it to me with the requested retainer. *We must establish an engagement with my new firm in order for me to continue to be involved in your representation.*

(emphasis added). This was followed on 4 October 1999 by letters from plaintiff to defendants stating in pertinent part *"I have not heard from you concerning my proposed terms of engagement for handling the appeal on your behalf."* (emphasis added). These unsolicited letters to defendants expressly condition plaintiff's representation of defendants upon defendants' agreement to plaintiff's financial terms, and their payment of a "substantial retainer." Defendants were entitled to rely upon plaintiff's clear statements that it would not "receive permission from firm management to go forward" without payment of a retainer, and would "not make an appearance in this appeal without a dependable commitment" to payment of fees. *See Spartan Leasing v. Pollard*, 101 N.C. App. 450, 455, 400 S.E.2d 476, 479 (1991) ("One to whom a definite representation has been made is entitled to rely on that representation if the representation is of a character to induce action by a person of ordinary prudence and is reasonably relied upon.") (citing *Fox v. Southern Appliances*, 264 N.C. 267, 141 S.E.2d 522 (1965)). It is undisputed that defendants neither responded to these letters, nor sent plaintiff any money. We conclude that plaintiff's letters to defendants do not establish the existence of an implied contract for legal representation.

ADAMS, KLEEMEIER, HAGAN, HANNAH & FOUTS, PLLC v. JACOBS

[158 N.C. App. 376 (2003)]

Plaintiff also argues that personal jurisdiction is properly exercised over defendants because they owe plaintiff in *quantum meruit* for legal services rendered on their behalf. Plaintiff contends that defendants' implied promise to pay for legal services provided by plaintiff is demonstrated by the fact that defendants "never told [plaintiff] to stop representing their interests[.]" However, the record is devoid of evidence that defendants had ever granted plaintiff permission to represent them in the first place. Plaintiff essentially argues that its unsolicited letters to defendants established a contractual arrangement, making it *defendants'* responsibility to amend or terminate their "representation." The letters provide no factual basis for this position. As discussed above, each of the letters makes clear that legal representation was contingent upon the parties reaching an agreement. We conclude that plaintiff's letters to defendants in no way justified plaintiff in *assuming* that defendants had chosen to hire the firm on appeal. We further conclude that in the absence of any evidence of an express or implied contract between plaintiff and defendants, plaintiff has no right to recovery in *quantum meruit. See Twiford v. Waterfield,* 240 N.C. 582, 585, 83 S.E.2d 548, 551 (1954) (to recover in *quantum meruit* "plaintiff must show by the greater weight of the evidence that both parties, at the time the labor was done or the services were rendered, contemplated and intended that pecuniary recompense should be made for the same"); *Thomas v. Thomas,* 102 N.C. App. 124, 125, 401 S.E.2d 396, 397 (1991) ("Recovery on *quantum meruit* must rest upon implied contract.").

Indeed, absent permission, plaintiff had no authority or right to represent defendants. *Dunkley v. Shoemate,* 350 N.C. 573, 577, 515 S.E.2d 442, 444 (1999) (" 'no person has the right to appear as another's attorney without the authority to do so, granted by the party for which he [or she] is appearing' ") (quoting *Johnson v. Amethyst Corp.,* 120 N.C. App. 529, 532, 463 S.E.2d 397, 400 (1995)); *Stamm v. Salomon,* 144 N.C. App. 672, 682, 551 S.E.2d 152, 159 (2001) (where "[n]othing in the record suggests that [defendant] gave his former attorneys permission to further represent him . . . his former counsel was without authority to make motions on his behalf"), *disc. review denied,* 355 N.C. 216, 560 S.E.2d 139 (2002). We conclude that plaintiff's assertion of a right to recover in *quantum meruit* does not advance its contention that defendants were subject to personal jurisdiction in North Carolina.

Plaintiff further contends that defendants "authorized and ratified [plaintiff's] work[.]" To support this assertion, plaintiff points out

ADAMS, KLEEMEIER, HAGAN, HANNAH & FOUTS, PLLC v. JACOBS

[158 N.C. App. 376 (2003)]

that defendants forwarded federal bankruptcy exemption forms to Hedges when requested to do so by Patton Boggs. The record shows that the bankruptcy forms were prepared by, and provided to, defendants by Patton Boggs attorneys. A Patton Boggs attorney mailed the forms to defendants, accompanied by a letter on Patton Boggs stationary, directing defendants to sign the forms and to forward them in the enclosed stamped and pre-addressed envelope. We conclude that the forwarding of these forms does not constitute "authorization" for plaintiff law firm to provide appellate representation, particularly as the bankruptcy exemption forms did not pertain to their appeal from the jury verdict.

We also reject plaintiff's argument that *Forman & Zuckerman v. Schupak*, 31 N.C. App. 62, 228 S.E.2d 503 (1976), "involv[es] almost identical facts" and thus "is controlling in this case." Although both cases address the issue of personal jurisdiction, the evidence in *Schupak* showed that "defendants sought out plaintiff to assist them in performance of professional services[;] . . . defendants supervised the work product of plaintiff; . . . [and] otherwise directly participated in the legal services being performed[.]" *Schupak*, 31 N.C. App. at 66, 228 S.E.2d at 506. Because pertinent facts in *Schupak* regarding the exercise of personal jurisdiction are entirely different from those presented on the record before us, the case has little or no bearing on the decision herein.

In sum, we conclude that "the bulk of [plaintiff's] allegations consist merely of a recitation of unilateral activity on its part, which is insufficient to establish minimum contacts." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984). As expressed by the South Carolina Supreme Court:

> Every communication between the parties was initiated by [plaintiff.] . . . If the 'minimum contacts inquiry can be manipulated to create personal jurisdiction where an in-state resident manufactures contacts between its home forum and a nonresident entity by means of its own extraterritorial inducements, then very little legal predictability remains to enable potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will subject them to suit.'

*Aviation Associates v. Jet Time, Inc.*, 303 S.C. 502, 508-09, 402 S.E.2d 177, 180 (1991) (quoting *Wells American Corp. v. Sunshine Electronics*, 717 F. Supp. 1121, 1125, n.3 (D.S.C. 1989)).

ADAMS, KLEEMEIER, HAGAN, HANNAH & FOUTS, PLLC v. JACOBS

[158 N.C. App. 376 (2003)]

We conclude that the record supports the presumed finding of fact made by the trial court in its order dismissing this case for lack of personal jurisdiction over defendants. "Although we are cognizant of the liberal trend toward exercising personal jurisdiction over non-resident defendants, the minimum contacts which are 'absolutely necessary' between the defendant and our [S]tate for North Carolina to invoke jurisdiction are missing here." *Filmar Racing*, 141 N.C. App. at 673, 541 S.E.2d at 737-38 (quoting *Tutterrow v. Leach*, 107 N.C. App. 703, 708, 421 S.E.2d 816, 819 (1992)).

The trial court did not err by dismissing plaintiff's action for lack of personal jurisdiction. Accordingly, the trial court's order dismissing plaintiff's action is

Affirmed.

Judge WYNN dissents.

Judge TIMMONS-GOODSON concurs in result.

WYNN, Judge dissenting.

Because I disagree with the majority's holding that in this case, the "minimum contacts which are absolutely necessary between the defendant and our state for North Carolina to invoke jurisdiction are missing," I respectfully dissent.

The majority correctly states the two-part analysis required for determining the existence of personal jurisdiction:

> First, the North Carolina long-arm statute must permit the exercise of personal jurisdiction. Second, the exercise of personal jurisdiction must comport with the due process clause of the Fourteenth Amendment of the United States Constitution.

I agree with the majority's conclusion that the requirements of the North Carolina long-arm statute have been met. However, I disagree with the majority's resolution of the due process analysis.

In a lengthy analysis, the majority narrowly focuses its personal jurisdiction due process inquiry to the defendants' relationship with the plaintiff excluding all of defendants' other related contacts with our State. Indeed, "there is no requirement that the cause of action, pursuant to which the jurisdictional claim is raised, be related to the activities of the defendant which give rise to the in personam juris-

diction." *Hankins v. Somers*, 39 N.C. App. 617, 621, 251 S.E.2d 640, 643 (1979) (quoting *Munchak Corp. v. Riko Enterprises, Inc.*, 368 F. Supp. 1366, 1372 (M.D.N.C. 1973)); *see also, ETR Corporation v. Wilson Welding Service, Inc.*, 96 N.C. App. 666, 386 S.E.2d 766 (1990) (where this Court considered activities related and unrelated to the legal action in that case to determine whether a basis for in personam jurisdiction existed).

"In determining whether the exercise of personal jurisdiction comports with due process, the crucial inquiry is whether the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. To generate minimum contacts, the defendant must have acted in such a way so as to purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the laws of North Carolina. Moreover, the relationship between the defendant and the state must be such that the defendant should reasonably anticipate being haled into a North Carolina court." *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 671-72, 541 S.E.2d 733, 736-37 (2001). "The existence of minimum contacts cannot be ascertained by mechanical rules, but rather by consideration of the facts of each case in light of traditional notions of fair play and justice. The factors to be considered are (1) quantity of contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties." *Marion v. Long*, 72 N.C. App. 585, 587, 325 S.E.2d 300, 302 (1985).

In this case, the defendants had several contacts with North Carolina such that it would not be unreasonable for them to anticipate being haled into the courts of this State. Significantly, the defendants hired two other North Carolina law firms to represent them in North Carolina courts. The defendants hired Patton Boggs L.L.P., a law firm with offices in Greensboro and Raleigh, to represent them in the Eastern District of North Carolina. During this trial, the federal district court denied defendants' motion to dismiss for lack of personal jurisdiction and the trial resulted in a $21,000,000 verdict against defendants. Steven Hedges, one of the trial attorneys, joined the plaintiff law firm after the trial in the Eastern District of North Carolina and in his sworn statement, Mr. Hedges alleges he handled several matters in defendants' appeal. Defendants contend they did not hire Mr. Hedges or the plaintiff law firm to handle any appellate

matters. Rather, they hired another North Carolina law firm, the Raleigh office of Smith Helms Mulliss & Moore to prosecute their appeal. The plaintiff alleges it assisted in the prosecution of defendants' appeal by handling several matters including filing a motion and preparing and filing the docketing statement.

I would hold that the requirements of due process are satisfied in this case. By their business activities including retaining two law firms in this State to represent them on the underlying matters giving rise to this action, defendants have "purposefully [availed themselves] of the privilege of conducting activities within [North Carolina], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), *see also, ETR Corporation v. Wilson Welding Service, Inc.*, 96 N.C. App. 666, 386 S.E.2d 766 (1990).