MARCEL ELUHU, Plaintiff v. VLADIMIR ROSENHAUS, Defendant

No. COA02-1167

(Filed 5 August 2003)

**Jurisdiction— personal—alienation of affections**

The trial court did not err by dismissing plaintiff's alienation of affections action against defendant based on lack of personal jurisdiction, because: (1) the evidence before the trial court disclosed little, if any, connection between defendant's contacts with North Carolina and plaintiff's cause of action; (2) neither plaintiff nor defendant is a resident of North Carolina and almost all of the contact between defendant and plaintiff's wife occurred in Tennessee; (3) plaintiff's bare allegation concerning the commission of the alleged tort in this State was effectively refuted by the affidavits filed in support of defendant's motion to dismiss; and (4) without some showing of interest on the part of North

ELUHU v. ROSENHAUS

[159 N.C. App. 355 (2003)]

Carolina in adjudicating this dispute, the inconvenience to defendant of defending the matter is not mitigated.

Judge TYSON dissenting.

Appeal by plaintiff from order entered 25 March 2002 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 11 June 2003.

*Cheshire, Parker, Schneider, Bryan & Vitale, by Jonathan McGirt, for plaintiff-appellant.*

*Manning, Fulton & Skinner, P.A., by Cary E. Close, for defendant-appellee.*

MARTIN, Judge.

Plaintiff brought this action seeking compensatory and punitive damages upon allegations that defendant had alienated the affections of plaintiff's wife. Defendant made a special appearance in the matter in order to file a motion to dismiss for lack of personal jurisdiction. The trial court granted defendant's motion, dismissing the claim for lack of personal jurisdiction over defendant, and plaintiff appeals. We affirm.

In his verified complaint, plaintiff alleged that he is a citizen and resident of the State of Tennessee and that defendant is a resident of the State of California, "and maintains a home in Raleigh, Wake County, North Carolina." He also alleged that an exercise of personal jurisdiction over defendant by the trial court was proper because he committed a tortious act within the State of North Carolina. Aside from general allegations aimed at meeting the elements of the tort of alienation of affections, plaintiff also alleged, "[u]pon information and belief," that defendant and plaintiff's wife developed a "romantic affair that began in 1998 and has continued until the present. . . . Plaintiff's wife left the marriage and continued her romantic involvement with the Defendant. . . . For some length of time during the course of his romantic involvement with Plaintiff's wife, Defendant resided in Wake County, North Carolina."

Attached to defendant's motion to dismiss was a sworn affidavit, in which defendant attested that he had been a citizen and resident of California since August 1999, had resided in Nashville, Tennessee, from August 1997 to July 1999, and resided in Raleigh, North Carolina, from August 1991 to July 1997. He stated that after moving

to Nashville, his only contacts with North Carolina included (1) the continued residence of his wife and son in Raleigh, where he visited them occasionally until April 1999, (2) a vacation in Atlantic Beach, NC, from 24 to 27 May 1999, and (3) ownership of a house in Raleigh which he rented to a third party from August 1999 to August 2000. Defendant attested that he sold the house in March 2001. Denying that he had ever had a "sexual relationship" with Ms. Eluhu, defendant stated that they worked together in Nashville and "developed a friendship." He further attested that:

> [t]he only time I have ever had any contact with Plaintiff's wife in North Carolina was during a three-day vacation to Atlantic Beach in May of 1999, where she was also vacationing, with her three children. During that time, I saw Plaintiff's wife only in public and for a short time at her rented condominium in the presence of her children.

Plaintiff's former wife, Colette Calmelet-Eluhu, stated in an affidavit that she was a citizen and resident of Tennessee and had never lived in North Carolina. Her description of her friendship with defendant and their contact at Atlantic Beach was similar to that contained in defendant's affidavit. She stated that she planned the beach vacation before she knew of defendant's plans to be there at the same time and that her contact with defendant during the beach trip had no effect on her relationship with plaintiff.

Plaintiff's ten assignments of error are organized into two main arguments in his brief. Plaintiff argues (1) the findings of fact in the trial court's order dismissing his complaint were insufficient to permit meaningful appellate review and (2) the trial court erred in finding that federal due process limitations did not permit the exercise of personal jurisdiction over defendant and consequently dismissing plaintiff's complaint. We reject both arguments.

"The trial court's determination regarding the existence of grounds for personal jurisdiction is a question of fact." *Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC v. Jacobs,* 158 N.C. App. 376, 379, — S.E.2d —, —.

> Absent a request by a party, a trial court is not required to make findings of fact when ruling on a motion. Rather, on appeal it is presumed that the trial court found facts sufficient to support its ruling. If these presumed factual findings are supported by competent evidence, they are conclusive on appeal.

*Filmar Racing, Inc. v. Stewart,* 141 N.C. App. 668, 672, 541 S.E.2d 733, 737 (2001) (citations omitted). In the present case, plaintiff has not pointed this Court to any place in the record where he requested such findings and we can find none. "Accordingly, the dispositive issue before us is the sufficiency of the evidence to support [the] determination that personal jurisdiction did not exist." *Id.*

A determination of personal jurisdiction involves a two-part analysis.

> First, the North Carolina long-arm statute must permit the exercise of personal jurisdiction. Second, the exercise of personal jurisdiction must comport with the due process clause of the Fourteenth Amendment of the United States Constitution. However, "when personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts necessary to meet the requirements of due process."

*Id.,* at 671, 541 S.E.2d at 736 (quoting *Hiwassee Stables, Inc. v. Cunningham,* 135 N.C. App. 24, 27, 519 S.E.2d 317, 320 (1999)). (citations omitted). In the present case, defendant conceded before the trial court that plaintiff had satisfied the long-arm statute. *See* N.C. Gen. Stat. § 1-75.4(3) (2003); *Godwin v. Walls,* 118 N.C. App. 341, 349, 455 S.E.2d 473, 480 (1995) (statute only requires plaintiff to claim listed injuries, not prove them). Therefore, our inquiry focuses on whether there was evidence in the record to support the trial court's determination that "the exercise of personal jurisdiction over Defendant . . . would not comport with due process of law."

In order to determine whether the exercise of personal jurisdiction comports with due process, the trial court must evaluate whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)).

> "Factors for determining existence of minimum contacts include '(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.'" In cases which arise from or are related to

ELUHU v. ROSENHAUS

[159 N.C. App. 355 (2003)]

defendant's contacts with the forum, a court is said to exercise "specific jurisdiction" over the defendant. However, in cases . . . where defendant's contacts with the state are not related to the suit, an application of the doctrine of "general jurisdiction" is appropriate. Under this doctrine, "jurisdiction may be asserted even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient 'continuous and systematic' contacts between defendant and the forum state."

*Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 617, 532 S.E.2d 215, 219, (citations omitted) *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000).

A trial court ruling on the defendant's challenge to the exercise of personal jurisdiction may either (1) decide the matter based on affidavits, or (2) conduct an evidentiary hearing with witness testimony or depositions. N.C.G.S. § 1A-1, Rule 43(e) (2001). Either way, "the burden is on the plaintiff to prove by a preponderance of the evidence that grounds exist for the exercise of personal jurisdiction over a defendant."

*Adams*, 158 N.C. App. at 378, —— S.E.2d at ——. The allegations in a complaint are taken as true and controlling unless the defendant supplements its motion to dismiss with affidavits or other supporting evidence, in which case the plaintiff must respond " 'by affidavit or otherwise . . . setting forth specific facts showing that the court has jurisdiction.' " *Bruggeman*, 138 N.C. App. at 615-16, 532 S.E.2d at 218 (citation omitted). A " ' "verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." ' " *Adams*, 158 N.C. App. at 382, —— S.E.2d at —— (quoting *Spinks v. Taylor and Richardson v. Taylor Co.*, 303 N.C. 256, 264, 278 S.E.2d 501, 506 (1981)) (citation omitted).

In the present case, plaintiff argues there are grounds to assert both specific and general jurisdiction over defendant. In terms of specific jurisdiction, plaintiff argues that "[t]he contacts between Defendant and North Carolina that are related to or give rise to the specific cause of action were those that occurred during the 'three-day vacation' during which Defendant connected with Plaintiff's wife in Atlantic Beach in May 1999." Plaintiff's complaint, however, contains no allegations with respect to this trip, but rather only general allegations as to defendant's relationship with Ms. Eluhu, several of

which either contain no reference to place or time or do not qualify as evidentiary statements as they are based only "upon information and belief." *See Tompkins v. Tompkins*, 98 N.C. App. 299, 304, 390 S.E.2d 766, 769 (1990) (allegations of misconduct, "absent any allegations going to a nexus between such misconduct and this State, are simply insufficient to permit the reasonable inference that personal jurisdiction over defendant could properly be acquired"). Thus, any information concerning the North Carolina beach vacation must be taken from the affidavits of defendant and Ms. Eluhu. Significantly, Ms. Eluhu attested that she "[knew] of no change whatsoever in my relations with Plaintiff, or my relations with Defendant during, right after or because of the beach trip to North Carolina."

The evidence before the trial court, therefore, discloses little, if any at all, connection between defendant's contacts with North Carolina and plaintiff's cause of action. That defendant admitted to seeing Ms. Eluhu at Atlantic Beach does not permit a conclusion that he alienated her affection from plaintiff at that time. Moreover, nothing in plaintiff's verified complaint successfully contradicts Ms. Eluhu's statement that seeing defendant during the beach trip had no effect on her relationship with plaintiff. For our purposes, the statement renders this contact between defendant and North Carolina quite insignificant with respect to plaintiff's claim for alienation of affection. In addition, although North Carolina does have an interest in providing a forum for actions based on torts that occur in North Carolina, the evidence presented to the trial court showed that neither plaintiff nor defendant is a resident of North Carolina and that almost all of the contact between defendant and Ms. Eluhu occurred in Tennessee. Given that the tort of alienation of affection has been abolished in both California and Tennessee, *see Dupuis v. Hand*, 814 S.W.2d 340 (Tenn. 1991), Cal. Civ. Code § 43.5(a) (2003), but not North Carolina, and that it is a transitory tort, to which courts must apply the substantive law of the state in which the tort occurred, *see Cooper v. Shealey*, 140 N.C. App. 729, 537 S.E.2d 854 (2000), plaintiff's decision to sue defendant in North Carolina smacks of forum-shopping. *See Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977). Lastly, defending against a suit in North Carolina would clearly be inconvenient for defendant, who resides in California, and plaintiff, as a resident of Tennessee, has no claim on the State of North Carolina to provide a forum for the settlement of his general disputes. *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 367, 348 S.E.2d 782, 787 (1986) ("It is generally conceded that a state has a 'manifest interest' in providing its residents with a convenient

forum for redressing injuries inflicted by out-of-state actors."). Considering all of these factors, especially the weak connection between defendant's trip to Atlantic Beach and the instant cause of action, in light of "traditional notions of fair play and substantial justice," the trial court did not err in finding defendant's contacts with North Carolina were insufficient to subject him to specific *in personam* jurisdiction.

In terms of general jurisdiction, the record admittedly discloses continuous contacts between defendant and North Carolina during a period of several years prior to the filing of the complaint. From 1991 to 1997, defendant was a resident of this State. Although he moved to Tennessee in 1997 and lived and worked there until April 1999, his wife and son remained in Raleigh in a home the couple owned, and defendant admittedly traveled back to Raleigh during this period "occasionally" to visit his family. He took a three-day vacation in Atlantic Beach in May 1999. After his family relocated to California, he rented the Raleigh house from August 1999 to August 2000, and he sold it in March 2001. The complaint was filed in October 2001. Taken together, these contacts with North Carolina are more significant than those of the defendant in *Fraser v. Littlejohn*, 96 N.C. App. 377, 386 S.E.2d 230 (1989). In that case, this Court held that even though the defendant had not resided or worked in North Carolina after 1986, two years prior to the filing of the action in 1988, the substantial contacts he had with North Carolina from 1983 to 1986, along with related minor contacts through 1988, constituted continuous and systematic contacts for purposes of exercising general jurisdiction over him. *Id.* at 383-87, 386 S.E.2d at 234-37. *See also Metropolitan Life Ins. Co. v. Robertson-CECO Corp.*, 84 F.3d 560, 569-70 (1996) ("The minimum contacts inquiry is fact-intensive, and the appropriate period for evaluating a defendant's contacts will vary in individual cases. In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed—to assess whether they satisfy the 'continuous and systematic' standard."), *cert. denied*, 519 U.S. 1006, 136 L. Ed. 2d 398 (1996).

However, a finding of continuous and systematic contacts does not automatically authorize the exercise of general personal jurisdiction over a defendant. *See Fraser*, 96 N.C. App. at 386-87, 386 S.E.2d at 236-37. The exercise of jurisdiction over a defendant may nonetheless violate due process based on inconvenience to the defendant

and/or a lack of interest of the forum state in the litigation. Other than the recognition by North Carolina of the claim for alienation of affections, nothing in the record indicates a reason for North Carolina to have an interest in the litigation. While this Court expressed an interest on the part of North Carolina in protecting the institution of marriage in *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000), that case involved a resident plaintiff whose marriage was allegedly destroyed by telephone calls and e-mails to her North Carolina resident spouse from the South Carolina defendant. In this case, neither plaintiff nor defendant is a resident of North Carolina; plaintiff's bare allegation concerning the commission of the alleged tort in this State was effectively refuted by the affidavits filed in support of defendant's motion to dismiss. Plaintiff neither alleged nor attested to the existence of witnesses or evidence within North Carolina necessary to his case. *Byham v. National Cibo House Corp.*, 265 N.C. 50, 57, 143 S.E.2d 225, 231 (1965); *Cooper*, 140 N.C. App. at 736, 537 S.E.2d at 858. Without some showing of interest on the part of North Carolina in adjudicating this dispute, the inconvenience to defendant of defending the matter here is not mitigated. Subjecting defendant to suit in North Carolina under these circumstances would not comport with due process and thus the trial court did not err in refusing to exercise general *in personam* jurisdiction over defendant.

The trial court's order dismissing plaintiff's action against defendant for lack of personal jurisdiction is affirmed.

Affirmed.

Judge LEVINSON concurs.

Judge TYSON dissents.

TYSON, Judge, dissenting.

Defendant engaged in sufficient minimum contacts within the State of North Carolina to subject him to personal jurisdiction consistent with due process, and to enable plaintiff to survive defendant's motion to dismiss. I respectfully dissent.

In *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000) our Court found jurisdiction based upon sufficient contacts that satisfied due process in an action for alienation of affections where an out-of-state defendant called and emailed plaintiff's husband in North

Carolina. The out-of-state calls were solicitations within the statutory language of the long-arm statute. *Cooper*, 140 N.C. App. at 734, 537 S.E.2d at 857; N.C.G.S. § 1-75.4 (2001). This Court noted the minimal requirements established by the federal courts, and held these contacts were sufficient to satisfy due process. *Id.* at 734-35, 537 S.E.2d at 858 (citing *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023, 75 L. Ed. 2d 496 (1983), and *J.E.M. Corporation v. McClellan*, 462 F. Supp. 1246 (D. Kan 1978) (exercising personal jurisdiction where defendant's only contact with the forum state was a single phone call from out-of-state)). See also, *Haizlip v. MFI of South Carolina, Inc.*, 159 N.C. App. ——, —— S.E.2d —— (2003) (finding sufficient minimum contacts where defendant's only contacts were phone calls and mailings to North Carolina).

Defendant and the majority's opinion concedes jurisdiction under the long-arm statute, leaving the issue of minimum contacts for consideration. N.C.G.S. § 1-75.4. The due process test for minimum contacts requires inquiry into the five factors discussed in the majority's opinion. *Bruggeman v. Meditrust Acquistion Co.*, 138 N.C. App. 612, 617, 532 S.E.2d 215, 219, *disc. review denied and appeal dismissed*, 353 N.C. 261, 546 S.E.2d 90-91 (2000) (citations omitted). The majority's opinion finds evidence to satisfy all requirements except for convenience to the parties and interest of the forum state.

The remaining factors of convenience and interest of the forum state have been termed the "fairness" factors and are viewed secondarily, after finding the existence of sufficient minimum contacts. *See Fraser v. Littlejohn*, 96 N.C. App. 377, 387, 386 S.E.2d 230, 237 (1989). The majority's opinion concludes that the two "fairness" factors outweigh the others in order to affirm the trial court.

I disagree. Although defendant now lives in California, and may be "inconvenienced" by this litigation, his substantial ongoing contacts and physical presence within North Carolina before, at, and after the time the cause of action arose mitigates against any inconvenience. "There is almost always some hardship to the party required to litigate away from home. But there is no constitutional requirement that this hardship must invariably be borne by the plaintiff whenever the defendant is a nonresident." *Byham v. House Corp.*, 265 N.C. 50, 60, 143 S.E.2d 225, 234 (1965). Although not a "resident" when the complaint was filed, defendant purposefully availed himself of the privileges of residing, raising his family, renting his house, and vacationing in North Carolina. Defendant could fairly anticipate being subject to litigation as a result of those contacts. If

this action arose out of an alleged civil assault or battery occurring in North Carolina, there would be little doubt that North Carolina had personal jurisdiction over defendant. Allowing plaintiff to bring his claim will not "offend[] 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940), *reh'g denied,* 312 U.S. 712, 85 L. Ed. 1143 (1941)).

As for the interest of the forum state, this Court in *Cooper* reiterated.

It is important to note that plaintiff cannot bring the claims for alienation of affections and criminal conversation in . . . (defendant's resident state) since that state has abolished those causes of actions. (citation omitted) Therefore, North Carolina's interest in providing a forum for plaintiff's cause of action is especially great in light of the circumstances. Furthermore, North Carolina's legislature and courts have repeatedly demonstrated the importance of protecting marriage. N.C. Gen. Stat. § 8-57(c) (spouses may not be compelled to testify against each other if confidential information made by one to the other would be disclosed); *Thompson v. Thompson,* 70 N.C. App. 147, 319 S.E.2d 315 (1984), *rev'd on other grounds,* 313 N.C. 313, 328 S.E.2d 288 (1985) (attorneys representing a client in a divorce proceeding may not use contingent fee contracts since they tend to promote divorce and discourage reconciliation); *Cannon v. Miller,* 313 N.C. 324, 327 S.E.2d 888 (1985) (the causes of action for alienation of affections and criminal conversation are still in existence).

*Cooper,* 140 N.C. App. at 735, 537 S.E.2d at 858.

North Carolina has personal jurisdiction over the defendant due to his "continuous and systematic" quantity and quality of contacts with North Carolina. The quantity and nature of the contacts, North Carolina's interest in the litigation, and the relative inconvenience to the parties complies with due process in finding personal jurisdiction over the defendant. The nature of this tort and the perceived strength of plaintiff's claim should not be considerations in a motion to dismiss for lack of personal jurisdiction. The trial court's dismissal at this early stage of litigation is error. I respectfully dissent.